### FOSTER *v*. MAYOR AND COUNCIL OF THE CITY OF COLLEGE PARK *et al*.

The Mayor and Council of the City of College Park, at an election held in said city on April 23, 1921, submitted to the voters the question of issuing bonds for the municipal purposes named in the ordinance. The clerk of the city council, being also registrar, opened the books for registration of voters thirty days before the date of said election, and closed them at five o'clock p. m. five days previous to said election, in accordance with a provision for such registration in the charter of the City of College Park (Acts of the General Assembly of 1913, p. 689). The result of said election was declared to be in favor of the issuance of said bonds. A petition was filed by the solicitor-general of the Atlanta Circuit, praying for validation of the bonds. A citizen and taxpayer intervened, in opposition to such validation. From the record it appears that the only evidence submitted as to the number of qualified voters voting in favor of the issuance of said bonds was the list of registered voters prepared by the city clerk. One of the grounds of objection by the intervenor was that the registration list prepared by the clerk and used in the election, and used on the trial as the only evidence of the number of qualified voters voting in said election, was void, because the law under which it was prepared had been repealed by the amendment to article 7, section 7, par. 1, of the constitution of Georgia (Civil Code of 1910, § 6563), as follows: " all laws, charter provisions, and ordi-

nances heretofore passed or enacted, providing special registration of the voters of counties, municipal corporations, and other political divisions of this State, to pass upon the issuance of bonds by such counties, municipal corporations, and other political divisions, are hereby declared to be null and void." The court rendered a judgment of validation, and the intervenor excepted. *Held*:

1. The registration being void because the law providing for all special registrations had been repealed by the constitutional amendment above quoted, the court erred in rendering a decree validating the bonds.

2. The ruling in the preceding headnote is necessarily a final determination of the suit for validation; and therefore it is unnecessary to rule upon the other assignments of error contained in the bill of exceptions.

No. 2802. MARCH 17, 1922. REHEARING DENIED MAY 20, 1922.

Validation of municipal bonds. Before Judge George L. Bell. Fulton superior court. August 6, 1921.

*Garland M. Watkins* and *Mark Bolding,* for plaintiff in error.

*George P. Whitman* and *John A. Boykin, solicitor-general,* contra.

GILBERT, J. A proceeding was instituted through the solicitor-general of the Atlanta Circuit, seeking the validation of $70,000 of bonds of the City of College Park, fifty thousand dollars to be used for the purpose of erecting public-school buildings; ten thousand dollars to be used in establishing and maintaining sewer outfalls, and ten thousand dollars to be used in laying off, paving, and improving sidewalks. Foster, a citizen and taxpayer, intervened, opposing the validation of the bonds. A judgment and decree was entered, validating the bonds. The bill of exceptions assigns error upon that judgment. The intervenor contends that the judgment validating the bonds was erroneous and must be set aside, because the registration list used by the managers of the election was not a valid and legal list of the registered qualified voters of the City of College Park entitled to vote in an election for bonds; and that the list so used was the only evidence introduced on the trial, tending to show whether or not the requisite majority of the qualified voters of College Park voted in favor of the issuance of the bonds. The contention of the intervenor is as follows:. "that said election was illegal, and that said bonds should not be confirmed and validated; and that with respect to the issue of said bonds, the same were not assented to by two thirds of the qualified voters voting in said election, as required by law; for that there was no legal registration of the voters and no legal list of registered voters prepared for said election and used in said

8

election, The charter of the City of College Park provides that it is the duty of the clerk of said municipality, on the first Monday in September of each year, to open a registration book for the registration of qualified voters of said city; said charter provides that said book shall be kept open from nine o'clock a. m. until 12 a. m., and from two o'clock p. m. to five o'clock p. m. each and every day, with the exception of Sunday and legal holidays, until five o'clock on Friday before the first Monday in December of each year, and that at said time said book shall be fairly and absolutely closed. Intervenor shows that the registration obtaining in said election and the registration list used by the managers in said election were not prepared in accordance with the law, as hereinbefore set out; but that the registrar opened said registration book thirty (30) days before April 23, 1921, the date fixed for said election, and kept the same open until five (5) days before the day of said election, under the provision in said charter relating to special elections in said city. Intervenor says that the provision in said charter relating to special elections was and is repealed by the following provision of an amendment to the constitution of this State, duly ratified by the people at the general election held in 1920 [1918], to wit, as follows: ' All laws, charter provisions, and ordinances heretofore passed or enacted, providing special registration of the voters of counties, municipal corporations, and other political divisions of this State, to pass upon the issuance of bonds by said counties, municipal corporations, and other political divisions, are hereby declared to be null and void.' " Incidentally it may be noted that the defendant in error in this court contends that this assignment of error cannot be considered, because the intervenor erroneously referred to the constitutional amendment of 1918 as having been ratified in the general election held in 1920. This merely inadvertent mistake in the year is of no consequence, since the amendment, in so far as it is applicable, is quoted in full, thus leaving no doubt as to the part of the constitution to which intervenor referred.

Section fifteen of the charter of College Park (Acts of the General Assembly of 1913, beginning on page 689) contains the following in regard to registration of voters: " That it shall be the duty of the city clerk of the City of College Park, on the first Monday in September of each year thereafter, to open a

registration book for the registration of the qualified voters of said city. Said book shall be kept open from nine o'clock a. m. until twelve m., and from two o'clock p. m. until five p. m., each and every day (Sunday and legal holidays excepted) until five p. m. on the Friday before the first Monday in December of each year, when said book shall be fairly and absolutely closed. It shall be the duty of said clerk, upon application in person, and not by proxy, of any male citizen, who is qualified to vote for members of the General Assembly, who has paid all taxes of every character legally imposed and demanded by the authorities of said city except for the year in which the application is made, and has done all street work required of him by said authorities, and who, if a resident of said city at the date of the election, shall have resided in said city thirty days next preceding the election, to register the name of such person on said registration book; and said clerk shall not knowingly register any person who is not lawfully entitled to be registered under the provisions of this act; and said clerk shall in every case, before registering the applicant, administer to him the following oath: . . It shall be the duty of said clerk to prepare three lists of the names of the voters registered, in alphabetical order; and after the same have been checked over and approved by the mayor and council of said city, the said clerk shall furnish the same, under his official seal and signature, with the approval of said mayor and council thereon, to the managers of the election at or before the polls are opened; and the managers shall permit no one whose name is not on said list to vote." This provision for registration is made specifically to apply in the general elections for Mayor and Council of the City of College Park, which, under the charter, are held on the first Monday in December annually. The provision for registration quoted above provides that " the managers shall permit no one whose name is not on said list to vote." Clearly, under this provision, the list of those qualified to vote in the general city election, under the charter, is limited to those registering with the clerk as provided in this section between the first Monday in September of each year and five o'clock p. m. Friday before the first Monday in December. The same section of the city charter further provides as follows: " For any special election in said city, the said city clerk shall open said registration book thirty days before the date fixed for such

election, and shall keep the same open during the hours specified for the regular elections until five o'clock p. m. five days before the day of the election, and shall prepare and furnish the registration lists as hereinbefore provided." Manifestly this provision for the registration of voters was to supply to the managers of elections a special list of voters, to be used at all elections other than the general city election held on the first Monday in December of each year; and the list of registered voters in such election has no connection with the list of registered voters required to be prepared for the general election. The legislative design was to require a new registration to be had within thirty days, doubtless on the theory that the registration list prepared for the regular election might become inaccurate and incomplete by reason of deaths, removals, and the arrival of minors at voting age.

It is contended that the provision for a registration of voters for special elections is not a special registration, but that it is general because it applies to all elections held at times other than the first Monday in December, and that the list does not become functus officio after the election; and therefore, under the ruling in the case of *Brown* v. *City of Atlanta,* 152 *Ga.* 283 (109 S. E. 666), it is a general registration, and not special. By a comparison it is readily seen that the requirement for registration in special elections in the City of College Park is totally unlike the requirement with which the court dealt in the case of *Brown* v. *Atlanta.* In the latter case there was but one registration for all elections, State, and county, and municipal, and the State and county tax-collector was the registrar for all purposes. There was nothing in the *Atlanta* case showing that the voters for the bond election were required to register at any special time, nor that a list of voters registering within any particular time limit was to be furnished to the managers of the election, nor that the managers should restrict the voters to those whose names were on such lists. G. B. Lindsay, clerk and treasurer of the City of College Park, testified in part as follows: "It is a part of my duties to register the voters for general and special elections held by the municipality of College Park. For the election held this year on April 23rd, I opened the books for that election thirty days before the election. I closed them at five o'clock five days before the election. I acted as registrar . . when the books were closed. I cut out the

blanks that had not been filled out, and there are no names in this book that were not registered up to that minute." One of the managers of the election testified, and others testified substantially, as follows: "The clerk furnished us a list of the registered voters before the election. If a man presented himself to vote, we looked on that list to see if his name was on it. If he was on the list, we let him vote. If his name was not on the list, we would not let him vote." The evidence, taken as a whole, shows clearly, and indeed there is no denial, that the list of voters furnished to the managers by the city clerk was the list made up by him of voters who registered under the registration for special elections, the books being opened thirty days before the bond election on April 23rd, and closed at five o'clock p. m. five days before said election.

We think it so clear that the registration list used in the College Park bond election, and on the trial for the validation of the bonds, was a special registration, as provided under section fifteen of the charter of College Park, that further discussion on that point is unnecessary. Having arrived at that conclusion, it necessarily follows that the registration was illegal and void. To hold otherwise would be to ignore the amendment to the constitution, known as the Brown amendment, ratified in 1918, as quoted above. The registration list being invalid, and there being before the court no other legal evidence by which it could be determined whether the requisite two thirds of the qualified voters voted in favor of the issuance of the bonds, the court erred in rendering a judgment validating the same. *Mays* v. *City of Jackson*, 147 *Ga.* 556 (94 S. E. 1006).

*Judgment reversed. All the Justices concur, except Fish, C. J., absent because of sickness.*