COWART *et al. v.* CITY OF WAYCROSS *et al.*

1. The provision requiring notice to be given as to the place at which the bonds were to be paid, as was properly held by the judge of the superior court, is notice subsequent and not precedent to the issuance of the bonds.
2. Upon consideration of the law and evidence the court was authorized to find that the registration of voters in this case was a compliance with a provision for a general registration, and not an attempt to have a registration for a special election for the creation of a new debt, in disobedience of the amendment to art. 7, sec. 7, par. 1, of the constitution, which was ratified at the general election held in 1918.
3. The court did not err in validating the issue of $125,000 of school bonds, so as to permit the City of Waycross to issue the same.

No. 4174. JANUARY 17, 1925.

Validation of municipal bonds. Before Judge Summerall. Ware superior court. December 15, 1923.

*E. K. Wilcox* and *Dickerson & Kelley,* for plaintiffs in error.

*A. B. Spence,* solicitor-general, *Parker & Parker, Parks, Reed & Garrett, Blalock & Blalock, Jerome Crawley, J. H. Quarterman,* and *Wilson & Bennett,* contra.

RUSSELL, C. J. On November 7, 1923, an election was held in the City of Waycross to determine whether or not bonds in the sum of $125,000 should be issued for the purpose of providing, building, and equipping public-school buildings in the city. The city commission declared the result of the election in favor of bonds; and after the usual notice to the solicitor-general of the Waycross Judicial Circuit, he filed a petition in behalf of the State against the City of Waycross, for the validation of the bonds. The city answered and admitted all of the allegations of the petition and joined in the prayers thereof; but Dan T. Cowart and eighteen other citizens and taxpayers intervened in opposition to the validation of the bonds, and were by appropriate order made

parties to the proceeding, with full right to interpose and urge objections to the confirmation of the bonds. By their intervention as amended they alleged that the bonds were not and could not be made valid and binding obligations of the City of Waycross, for two reasons: (1) Because the city commission did not, in the ordinance calling the election, specify the place of payment of the bonds. (2) Because the election was illegal, in that no legal list of registered voters of the city was prepared and used therein, and the bonds were not assented to and authorized by the requisite number of qualified voters at an election legally called and held for that purpose. The case came on for hearing, and at the conclusion of the evidence and after argument of counsel the court rendered a judgment validating and confirming said issue of bonds, and the intervenors excepted.

1. Was the ordinance calling the election void because it failed to specify the place of payment of the bonds? In our opinion the resolution calling the election contained all that is required by section 440 of the Civil Code of 1910. That section declares: "When any county, municipality, or division shall desire to incur any bonded debt, as prescribed in paragraphs 1 and 2, section 7, article 7 of the constitution of 1877, the election required shall be called and held as follows, to wit: . The officers charged with levying taxes, contracting debts, etc., for the county, municipality, or division shall give notice for the space of thirty days next preceding the day of election, in the newspaper in which the sheriff's advertisements for the county are published, notifying the qualified voters that on the day named an election will be held to determine the question whether bonds shall be issued by the county, municipality, or division. In said notice he shall specify what amount of bonds are to be issued, for what purpose, what interest they are to bear, how much principal and interest to be paid annually, and when to be fully paid off." It will be noted that the essential contents of the notice of the election are specifically stated; and under the express terms of the code section the voters need not be notified except as to the amount of bonds, the purpose for which they are to be issued, the rate of interest they are to bear, how much principal and interest is to be paid annually, and *when* the bonds issued are to be fully paid off. Nothing is said as to the place at which the bonds are to be paid; and we think the reason why the notice

as to the place where the bonds are to be paid was properly omitted is because that is a matter in which the purchasers of the bonds are much more interested than the citizens who are subjecting themselves to liability for the indebtedness are concerned. The voters who will become liable to pay the bonds are of course concerned as to the purpose for which the debt is created, and as to the amount of bonds to be issued, and as to the rate of interest, and as to how and when the indebtedness they are to assume is to be discharged; and all of these matters are included in the notice required by section 440, supra. But no substantial right of the municipality would be affected if, in selling the bonds after they issue, the *place* of payment is fixed to suit the convenience of the buyers of the bonds. The place where the bonds are to be paid is merely an incident to the sale of the bonds *after* their issue; whereas the requirements of the notice provided by section 440, supra, include information as to all such essential matters as would enable a voter to determine whether in his opinion the bonds should or should not be issued.

It is true that by section 30 of the charter of the City of Waycross (Acts 1909, p. 1456 et seq.) the municipal authorities were given authority to issue bonds for building and equipping public-school buildings; and in this section it is provided that the municipal authorities, by appropriate resolution or ordinance, shall direct and provide that such bonds shall be issued, and they are required to specify, among other things, the place of payment. It is plain that to fix the advertisement of the place of payment, as a requisite antedating the election as to whether bonds shall be issued, would bring the provision of the charter contained in section 30 in conflict with the requirements of section 440 of the code, supra, whereas to hold that the requirement is unnecessary as a preliminary to the election would prevent that conflict and uphold the validity of section 30. It is a uniform rule in the construction of statutes that the construction which will uphold the statute is to be preferred to one which will destroy it. This view is emphasised by section 441 of the Civil Code (1910), which directs how the election shall be held; and by section 442, which provides that "When said notice is given and said election held in accordance with the preceding section, . . then the authority to issue the bonds . . is hereby given. . ." This is express authority to issue the bonds when

the notice required by section 440 is given and the election held in accordance with section 441. However, we do not think that the terms of section 30 of the charter of the City of Waycross, when that section is construed as a whole, requires that the resolution calling the election shall prescribe the place of payment of the bonds. It was certainly not the intention of the legislature to pass a special provision in regard to the notice to be given in Waycross, in conflict with the terms of section 440, supra, the general law upon the subject of such notice. So the requirement of section 30 as to the place of payment (which does not appear in section 440, supra) is merely that such notice shall be given before the bonds shall be *issued*. The requirements of section 440 must be complied with before the election prescribed in section 441. Notice as to the place of payment of bonds issued by the City of Waycross is complied with if such notice be given before the bonds are issued. Validation precedes issuance, and issuance is the act of floating or disposing of the bonds. In *Epping* v. *Columbus,* 117 *Ga.* 263 (43 S. E. 803), it was held that a city is not required to make provision for the payment of bonds to be issued by it when the election is called or before they are validated, but may do so any time before they are issued. We think the same reasoning applies to the provision contained in section 30 of the charter of the City of Waycross. Furthermore, inasmuch as the general law has been complied with, the city might comply with the requirement of section 30 of the charter by passing a resolution prescribing the place of payment at any time before the bonds are actually issued.

2. The plaintiffs in error insist that the election was illegal and void, in that no legal list of registered voters of the City was prepared and used therein, and the bonds were not assented to and authorized by the requisite number of qualified voters.

In 1918 (Acts 1918, p. 99) the following amendment to the constitution was adopted: "All laws, charter provisions, and ordinances heretofore passed or enacted, providing special registration of voters of counties, municipal corporations, and other political divisions, are hereby declared to be null and void; and the General Assembly shall hereafter have no power to pass or enact any law providing for such special registration." This was adopted in the election of 1918. Thus it was provided that there shall hereafter be no special registration for elections to incur new

debts in any municipal corporation in this State. If a special registration was had for the purpose of qualifying voters for the election to be held on November 7, 1923, then the objections of the plaintiffs in error would be good; but we think that the evidence was ample to authorize the learned trial judge who presided in this case to find that those voters who were permitted to register were authorized under the general registration provisions embodied in the charter of the City of Waycross upon the subject of registration, and there is nothing in the ordinance calling the election which conflicts with this view of the law. The ordinance of the City of Waycross upon the subject of registration required the clerk of the city council to keep a voters' book for the purposes of registration of voters, and to keep the same open each day, Sundays excepted, from October 20 to November 20 of each year, and on November 20, immediately after closing the voters' book, to make out a full and complete list of the voters who had registered, and furnish this book to the city registrars within five days, when the city registrars should revise the list and purge it of all persons not qualified under the laws and ordinances of the city. The last annual election for municipal officers was held on the first Saturday in January, 1922. In accordance with the requirements of the aforementioned ordinance the voters' book was opened on October 20, 1922, but was not closed on November 20, 1922, because the clerk kept the book open as a permanent voters' book under an amendment to the charter of the City of Waycross of 1922, by which provision was made for the permanent registration of voters.

The learned counsel for plaintiffs in error insist that the election was illegal, because the registration list used in the election was void because it was a special registration prohibited by the amendment of art. 7, sec. 7, par. 1, of the constitution, ratified at the general election held in 1918. But inasmuch as this amendment has reference only to registrations "to pass upon the issuance of bonds," we can not hold that the registration list was void on the ground that it was prepared for a special registration for the bond election. Counsel for plaintiffs in error say the registration list which they contend was prepared for a special election "to pass upon the issuance of bonds" was "used at the trial as the only evidence of the number of qualified voters voting in the election," and from this argues that it was thereby established that the requi-

site number of qualified voters did not vote in favor of the issuance
of bonds. We think that under the evidence introduced in the
case the court was authorized to find the registration to be a
general and not a special registration; and in any event, it is well
settled that where the result of an election is contested upon any
ground, the declared result of the election is prima facie the correct
and legal result of the balloting, and the burden is therefore upon
the plaintiffs in error to rebut this prima facie case by establishing
their contention that the requisite numbers of qualified voters had
not voted in favor of the issuance of bonds, which included proof
as to exactly how many of the 1324 voters who voted for bonds
were illegally registered, and how and why these voters were dis-
qualified; and we think the plaintiffs in error failed to carry this
burden and that of establishing in rebuttal that an election prima
facie legal was in fact illegal and ineffective under the constitutional
requirement requiring two thirds of the qualified voters, etc. It
will be noted that the attack of the plaintiffs in error is twofold.
First, that the registration was a special registration; second, that
the election did not result in the bonds receiving the requisite
number of votes. Under the evidence in the record we can not
concur with either proposition. Or, to state the matter more
correctly, we can not hold that the trial judge was not authorized
to overrule both contentions. In *Brown* v. *Atlanta*, 152 *Ga.* 283,
294 (109 S. E. 666), this court defined special and general regis-
trations, and differentiated the one from the other, as follows: "A
special registration as distinguished from a general registration is
one designed for a particular election and which becomes functus
officio when the election under which it was held has been had, that
is to say, when the registration can not be used for any other pur-
pose. A general registration is one made up under general rules."
Under the evidence the trial judge was authorized to find this
registration a general registration. In fact there is only one cir-
cumstance which would have required him to find to the contrary,
—the fact that the clerk of the city council referred to the election
for school bonds in his advertisement which notified the voters
of Waycross of their duty to register. The provision requiring
the clerk to publish notice of the opening of the registration book
is for the purpose of giving the voters of Waycross an opportunity
to register, and is a requirement for that purpose effective for each

year.   It is a general rule, and has no reference to special elections. As held in *Brown* v. *Atlanta*, supra, general rules provide only for general registration and a registration under general rules is a general registration.   The evidence disclosed that in 1922 the clerk opened the registration book of Waycross on October 20, 1922, and kept it open until November 20, 1922.   But, in accordance with an amendment of the charter of the City of Waycross in 1922, the clerk did not close the registration book on November 20, 1922, but kept it open as a permanent voters' book because by the amendment of 1922 provision was made for the permanent registration of voters.

Plaintiffs in error contend that the failure of the clerk to close the voters' book on November 20, 1922, was illegal.   Section 37 of the act of 1922 (Acts 1922, p. 1087) provides as follows:   "The city clerk shall open the voters' book of the City of Waycross for the registration of voters for elections to be held after the passage of this act, under the terms and provisions as to registration of voters now of force in the City of Waycross.   Beginning with the registration of voters for the election of the first commissioners, the names of all such voters who shall finally be placed on the registration or voters' list for said election shall be placed on a permanent registration list for said city by the city clerk, and the names of other voters whose names shall appear on registration of voters for other city elections, or who shall register from time to time, shall be added to said registration list . . after registration."   It seems that the registration list used in the election was prepared in conformity to this provision of law, although the notice calling for a registration mentioned school bonds.   The clerk of the City of Waycross registered the voters as required in the law providing a permanent registration in Waycross, by first placing thereon those who registered for the first commissioners' election and then the list "of other voters whose names shall appear on registration of voters for other city elections, or who shall register from time to time," and this we hold he had the authority to do. Prima facie there is a presumption that he did nothing else; and it was not made to appear to the lower court that the names derived from any of the three sources above referred to were disqualified from being registered.   As held in *Brumby* v. *Marietta*, 132 *Ga.* 408 (64 S. E. 321), an irregularity in the manner of registering

voters, where it does not appear that such irregularity affected the result, furnishes no cause for avoiding the election. In that case the court said: "If there was some irregularity in the manner of registering a few voters, but it did not appear that such persons voted in the election, or that they were in fact not qualified to register, or that such irregularity affected the result, this furnished no cause for declaring the election void, and refusing to validate bonds authorized thereby." To the same effect are the rulings in *Cole* v. *McClendon*, 109 *Ga.* 183 (34 S. E. 384); *Coleman* v. *Board of Education*, 131 *Ga.* 643 (63 S. E. 41). The case at bar is entirely dissimilar in its facts from the case of *Foster* v. *College Park*, 153 *Ga.* 112 (112 S. E. 361). In the present case, as we have held, the court was fully authorized to find that the registration was a general registration under the provisions of the act of 1922, supra, providing for a general registration. In the *Foster* case the registration was special and for the sole purpose of holding the bond election. The registration list used in the election was functus officio after the election, and no person who had not registered specially for the bond election was permitted to vote. The undisputed facts made a case of a special registration for a bond election, in violation of the amendment of 1918 to the constitution, which especially prohibited special registrations for elections held on the question of a bond issue. In that case the complainant established the absolute invalidity of the registration list, and thereby disqualified all voters voting in the election by proving that no others than those illegally registered voted for the bonds. In the present case, even if it be conceded that some of those voting in the election upon the school bonds for Waycross were not entitled to vote, it does not appear how many of those registered were illegally registered or how many of those who were illegally registered actually voted, or how they voted. Even under the contentions of the plaintiffs in error, 1300 voters were legally registered, and it is not shown of the 1947 who voted how many and who were the illegal votes; and since 1297 votes would be sufficient to constitute the necessary two thirds of 1947 votes cast, it was not shown that all of these 1297 may not have come from the 1300 who were undoubtedly qualified to vote. So we conclude there was no error in the judgment of the lower court.

*Judgment affirmed. All the Justices concur.*