S91A1174. MAYOR & COUNCIL OF THE CITY OF WADLEY v. HALL et al.
(410 SE2d 105)

BENHAM, Justice.

This is an appeal from an order invalidating an election.

1. Election returns carry a presumption of validity. *Cowart v. City of Waycross,* 159 Ga. 589 (126 SE 476) (1924). OCGA § 21-3-420 governs the procedural parameters of an election contest:

A petition to contest the results of a primary or election shall be filed in writing with the city clerk within five days after the results of the election are declared by the governing authority. . . .

In the present case, when the election results were declared on Monday, December 10, 1990, the appellees had through Monday, December 17, to file a petition because the fifth day fell on Saturday, December 15. However, appellees did not file the petition until December 18. In *Schloth v. Smith,* 134 Ga. App. 529 (215 SE2d 292) (1975), the Court of Appeals determined that since the contestants failed to comply with the statute's five-day limit, the trial court lacked jurisdiction over the contest. Accordingly, under OCGA § 21-3-420 and the principle stated in *Schloth,* the trial court in this case was without jurisdiction to decide the merits of the statutory election contest.

Appellees' argument that appellants' fraud tolled the five-day limit of OCGA § 21-3-420 is not sustained by the record.

The record in this case, when applied to the controlling statutory and case law authority, demands the conclusion that the untimeliness of the challenge prevented the trial court from ever obtaining jurisdiction over the challenge. The trial court erred, therefore, in setting aside the election under the authority of OCGA § 21-3-420.

2. The superior court also erred in rendering its order based in equity. Equity will not take cognizance of a plain legal right where an absolute and complete remedy is provided by law. OCGA § 23-1-4. In *Sherrer v. Hale*, 248 Ga. 793 (285 SE2d 714) (1982), this court concluded that equitable relief is improper if the complainant has a remedy at law which is "adequate," i.e., as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity. In the present case, the procedure mandated by OCGA § 21-3-420 provides an adequate remedy at law. It follows that the trial court was without authority to exercise equitable jurisdiction.

3. Since the trial court did not have jurisdiction over either the statutory contest (because appellees did not file their petition within the statutory period of limitation) or the equitable claim (because an adequate remedy at law was available), its judgment must be reversed.

*Judgment reversed. All the Justices concur.*

BELL, Justice, concurring.

I write this concurrence to make clear to prospective contest petitioners exactly how strictly this Court is applying the five-day period of OCGA § 21-3-420.

This case concerns the December 8, 1990, election for two council seats in the City of Wadley, Ga. Of the four candidates for the two seats, the declared winners are the incumbent councilpersons, Izell Mack and Albert Samples. The appellees are the two losing candidates, Jerry Powell and James Hall. After unsuccessfully petitioning the mayor and city council to invalidate the election, appellees filed a proceeding in superior court that was in part an appeal pursuant to § 21-3-420. After an evidentiary hearing, the court declared the election void. In support of its ruling the court found that

> numerous laws of the State of Georgia as contained in the Georgia Municipal Code and the Georgia Election Code, as they relate to the conduct of municipal elections, were not followed nor complied with in the election. . . . The Court will not list each and every such deviation, but finds that the numerous irregularities set forth herein [the court described eighteen irregularities] are sufficient to cast doubt on whether the election was fairly and lawfully conducted and that such irregularities are sufficient to cast doubt on the results of the election.

In addition to declaring the election void, the court denied a motion to dismiss by appellants (the mayor and the city council).

Appellants' enumerations of error did not challenge the merits of any of the court's findings concerning election irregularities, nor did appellees enumerate as error the court's conclusions that the irregularities are sufficient to cast doubt both on the conduct of the election and the election results. Instead, appellants contended that the court erred by denying their motion to dismiss the appeal and by exercising appellate jurisdiction. Specifically, appellants contended that appellees' contest petition was untimely under § 21-3-420, and that the trial court therefore lacked jurisdiction of the appeal and should have dismissed it.

OCGA § 21-3-420 is part of the Georgia Municipal Election Code (GMEC). OCGA § 21-3-420 provides that

> [a] petition to contest the results of a primary or election shall be filed in writing with the city clerk *within five days after the results of the election are declared by the governing authority.* Upon the filing of the contest petition, a hearing shall be set before the governing authority of the municipality. . . . The governing authority shall render its decision in writing within a reasonable time after such hearing. . . . The decision of the governing authority shall be considered a final determination of the contest unless appealed [to the superior court] as provided in [OCGA] § 21-3-421. [Emphasis supplied.]

In the present case the election was held on December 8, 1990, and the results were declared by appellants on December 10. Under § 21-3-420, appellees were required to file their contest petition by Monday, December 17 (December 15, the fifth day after the results were declared, was a Saturday), but appellees did not file the petition until December 18. Appellees delayed filing the petition because they did not want to decide whether to file a petition until they had reviewed election documents to determine which electors had voted. Despite four separate requests by appellees during the period from Saturday, December 8 (the date of the election), to Friday, December 14, it was not until the afternoon of Monday, December 17, that appellants provided appellees with a document (the Wadley registration list) that identified electors who had voted. Because a city registrar in charge of the document refused to make them a copy, appellees copied the information by hand.[1] They finished on December 18, and

---

[1] OCGA § 21-3-8 (8) requires the governing authority to "furnish upon request a certified copy of any document in its custody." Here, the governing authority allowed appellants

filed their contest petition the same day. Appellants denied the petition, and appellees appealed to superior court. Appellants moved to dismiss on the ground the contest petition had been untimely filed, but the court denied the motion.

In denying the motion to dismiss, the superior court made the following findings and conclusions:

> Based upon all the evidence submitted the Court finds that it has jurisdiction over this matter, and that it should not be dismissed as not having been timely filed. The evidence demonstrates that the petition to contest the election was filed one day after the City furnished to [appellees] the information which had previously been requested *and which the [appellees] were entitled to inspect to determine whether to file a contest of the election.* [Emphasis supplied.]

My interpretation of the superior court's ruling is that the superior court, as a matter of statutory interpretation, construed the five-day period of § 21-3-420 as subject to being tolled if a petitioner requests from the governing authority the identity of electors who voted in the election in dispute and the governing authority delays its compliance with the request.

On its face, the superior court's interpretation is arguably good policy, as a strict construction of the five-day requirement might have the effect of encouraging skeletal, and possibly nonmeritorious, contest petitions by petitioners who do not know whether they have good grounds, but cannot wait to find out.

Moreover, GMEC as a whole shows a legislative intent that citizens must have prompt access to the election documents that disclose the identity of electors. For example, OCGA § 21-3-6 requires that election records "shall be open to public inspection and may be inspected and copied by any elector during usual business hours at any time when they are not necessarily being used by the custodian or his employees having duties to perform in reference thereto." OCGA § 21-3-8 states that the governing authority "shall perform all the duties imposed upon it by this chapter, which shall include the following: . . . (8) To furnish upon request a certified copy of any document in its custody by virtue of this chapter." OCGA § 21-3-135 (b) mandates that "[w]hen requested, it shall be the duty of the registrar or the city clerk to furnish a certified copy of [a list of all qualified elec-

---

to see the list of electors on the day before they filed their contest petition, but refused to furnish a certified copy, thereby forcing appellants to copy out the information by hand. It is arguable that under these circumstances appellants were not "furnished" a copy until they finished the hand copying, which was on the same day they filed their petition.

tors], or any part thereof." OCGA § 21-3-142 requires that "[t]he list of electors . . . shall be open at all times to the reasonable inspection of any citizen of the municipality." OCGA § 21-3-326 says that voter's certificates and electors' lists "shall be available for public inspection."

When considered in the aggregate, these provisions of GMEC disclose an unmistakable legislative intent that, upon the request of a citizen, the governing authority must provide the list of electors without delay. And although the legislature does not expressly say so, a primary purpose for imposing that duty on the governing authority arguably is to encourage the regularity of elections by enabling citizens to independently monitor elections for irregularities and, where appropriate, to file petitions contesting the elections pursuant to § 21-3-420. To the extent that is a legislative purpose, it may be seriously undermined or nullified if the period for filing contest petitions is not tolled during any delay in disclosing the identity of electors who voted in the election under scrutiny.

However, this Court today chooses a different approach to § 21-3-420, which is that the literal language of the statute specifying a five-day period must be adhered to, notwithstanding city officials' illegal failure to comply with repeated requests within the five-day period to inspect election documents. An underlying policy reason for this approach appears to be that contest petitions must, in all events, be expedited. A further reason appears to be that, if a city delays supplying election documents to a prospective contest petitioner, the petitioner has the right to file a skeletal petition within the five-day period and to thereafter supplement the petition after reviewing the election documents.

The result of the Court's holding is that the election at issue in this case will be allowed to stand, despite having been tainted by undisputed, serious, and pervasive irregularities. Because of the obvious injustice this works on appellees, I am uncomfortable with the result. However, after much consideration of the arguments for and against the Court's holding, I am unable, despite my discomfort with the holding, to conclude that the plain words of the statute should be disregarded, and for that reason I concur in the Court's opinion.

DECIDED NOVEMBER 15, 1991.

*Paine, McElreath & Rhodes, Benjamin F. McElreath, Roosevelt Warren,* for appellants.
*Burnside, Wall & Daniel, James B. Wall,* for appellees.