SHEFFIELD *et al. v.* PATMOS SCHOOL DISTRICT *et al.*

1. The court did not err in overruling the demurrer filed by the intervenors to the petition of the solicitor-general for the statutory validation of certain bonds, which demurrer was also directed against the allegations of the answer of the respondent filed in aid of the petition, and merely alleged more specifically matters that were covered by allegations of the petition, the grounds of demurrer raising only questions as to the sufficiency of the petition and answer.

2. Section 143 of the Code of School Laws of this State, created by the act of 1919 (Acts 1919, pp. 288-345), authorizes the holding of elections in school districts and counties to vote on questions as to issue of bonds for the purpose of building and equipping schoolhouses. By the provisions of the act only those school districts are authorized to call such elections which are (1) school districts "in which a local tax is now or may hereafter be levied for school purposes," and (2) school districts "in a county now levying a local tax." On the trial of the statutory proceeding to validate bonds voted at an election in the Patmos School District, held on the 31st day of July, 1922, under authority of the above-mentioned act, a witness for the petitioner having testified on cross-examination that at the time the trustees of the Patmos School District called the election no local tax for school purposes was being levied by that district, the witness was permitted on redirect examination to testify that the county of which the school district was a part had levied a county-wide school tax. *Held,* that the court did not err in admitting the testimony delivered on redirect examination, over the objection that it was "irrelevant and immaterial," or upon the further ground that "there was no proof that there was a local tax in the county."

3. At the trial, by agreement of the attorneys the judge opened the ballot-box for the purpose of examining the ballots and ascertaining the number voting for and the number voting against bonds. It appeared that certain ballots "for" bonds were voted by certain persons. There was no contention that there was any error or fraud in marking the ballots.

The persons whose ballots were thus identified offered to testify that they voted "against" bonds. The court excluded this evidence on the ground that the ballot was the highest and best evidence of the fact. There was no error in this ruling.

4. Section 143 of the Code of School Laws of this State, as provided in the act of 1919 (Acts 1919, pp. 288-345), authorizes a school district in a county levying a local tax for school purposes to call an election for issuance of bonds as provided in the act, and to that extent adds to the provisions of the act of 1912 (Acts 1912, p. 176), which authorized elections of that character to be held only in school districts that levied such local tax.

5. The election was not void on the ground that the trustees who called the election were not elected in conformity with law. Whether or not the trustees were formally elected, they were de facto trustees, and their acts in calling the election cannot be collaterally attacked on account of the manner of their selection.

6. The evidence was insufficient to support the judgment validating the bonds.

No. 3701. February 27, 1924.

Validation of schoolhouse bonds. Before Judge Custer. Baker superior court. November 11, 1922.

The solicitor-general of the Albany judicial circuit, in the name of the State of Georgia, filed a petition against the Patmos School District of Baker County, Georgia, in accordance with the provisions of the Civil Code (1910), § 446, prescribing the duties of the solicitor-general in proceedings for the validation of bonds; and a rule nisi having been granted thereon, calling upon the Patmos School District by its proper officers to show cause at the time and place specified in the order why the prayers of the petition should not be granted, the Patmos School District through its attorney at law filed an answer in which it admitted all the allegations of the petition, stated in greater detail matters that were included in the petition filed by the solicitor-general, and prayed that the bonds be validated. After the filing of the answer B. A. Sheffield and other persons, alleging themselves to be citizens and taxpayers of the Patmos School District, were duly allowed by order of the court to intervene and become parties to the case, with all the rights of defendants. These parties by intervention filed a demurrer in which it was stated that it was directed against both the petition filed by the solicitor-general and the answer filed by the Patmos School District. Subject to the demurrer the intervenors also filed an answer. The trial judge overruled the demurrer, and after hear-

ing evidence rendered a judgment validating the bonds. The intervenors excepted.

*W. I. Geer,* for plaintiffs in error.

*E. E. Cox* and *B. C. Gardner, solicitor-general,* contra.

ATKINSON, J. 1. The judge properly overruled the demurrer to the petition, which was also directed against the answer filed by the trustees of the Patmos School District to the petition filed by the solicitor-general. The portions of the answer demurred to merely alleged in greater detail matters that were alleged in the petition. A comparison of the petition with the provisions of the Civil Code (1910), §§ 445, 446, relating to the validation of bonds of counties, municipalities, or divisions desiring to incur bonded debts, and prescribing the duties of the solicitor-general and the character of the petition to be filed by him, as well as its scope, will show that the criticisms upon the sufficiency of the petition filed by the solicitor-general and the sufficiency of the answer filed by the trustees of the Patmos School District was without merit. *Stewart* v. *County of Bacon,* 148 *Ga.* 105 (2) (95 S. E. 983).

2, 3. The rulings announced in the second and third headnotes do not require elaboration.

4. It is insisted that the proposed validation of bonds should not be adjudged, because the evidence shows a local-school tax was not levied in the Patmos School District, and the act of 1912 (Acts 1912, p. 176) only allows an election in a school district in which a local tax is now or may hereafter be levied for school purposes. There is no merit in this contention. The evidence shows that in Baker County, of which the Patmos School District is a part, there exists a county-wide local tax for school purposes. Section 143 of the Code of School Laws of this State, as provided in the act of 1919 (Acts 1919, pp. 288, 345), provides: "When [by] one fourth of the registered qualified voters of a school district, consolidated district, or county, in which a local tax is now or may hereafter be levied for school purposes, *or of a district in a county now levying a local tax* [italics are the writer's], shall be filed with the board of trustees, or board of education of such a school district, consolidated district, or county, a petition asking for an election for the purpose of determining whether or not bonds shall be issued for the purpose of building and equipping a schoolhouse or houses for said school district, consolidated district, or county, the required

number of petitioners to be determined by the said board of trustees, or board of education, it shall be the duty of said board of trustees, or board of education, to fix the amount, denomination, rate of interest, and dates when due, and call such election in terms of law now provided for a county issue of bonds, except as herein otherwise provided." The foregoing provision of the act of 1919 adds to the law as contained in the act of 1912, supra, to the extent of providing that an election for school bonds may be held in a district · that does not levy a local tax, provided such school district constitutes a part of a county that is "now levying a local tax."

5. It was insisted by the intervenors that the proposed bonds should not be validated, because the trustees of the school district were not elected in conformity with law, but were chosen by a mass meeting. Section 120 of the Code of School Laws of this State, as provided by the act of 1919 (Acts 1919, pp. 288-335; Park's 1922 Supplement, § 1438(d)), provides for the selection of trustees of school districts. The provision is that the board of education "may or may not order the citizens of the several school districts to hold an election for the purpose of electing three trustees for each district in the county. The election shall be held at a time and place and in a manner prescribed by the county board of education, . . and they shall serve, one for three years, one for two years, and one for one year, as the county board of education may determine. . . The notice of their election shall be filed by the election managers with the county school superintendent, who shall submit the same to the county board of education for their approval. After the local board of trustees have been approved and properly commissioned by the county board of education it shall meet immediately and organize," etc. The case of *Stephens* v. *School District,* 154 *Ga.* 275 (8) (114 S. E. 197), involved a question of this character; and it was there held: "The trustees of this district were not elected by the voters of this district, but seem to have been recommended for these offices by a mass meeting of fifteen or twenty citizens. Upon this recommendation the county board of education commissioned the persons so selected as trustees of this district; and they have acted as such ever since they got their commissions. The notice, calling the election to determine whether bonds should be issued for building and equipping a schoolhouse in this district, was signed by two of these trustees, and approved by the ordinary of the county and the

county board of education. The intervenors objected to the validation of these bonds, on the ground, that, as these trustees were not elected by the citizens of the district as required by law (Code of School Laws, sec. 120, Ga. Laws 1919, p. 335, Civil Code of 1910, § 1533), their appointment, the calling of said election, and the election itself were null and void. *Held,* that such trustees were de facto trustees, and their action as such in calling this election cannot be collaterally attacked as void on account of the manner of their selection and appointment. *DeLoach* v. *Newton,* 134 *Ga.* 739 (68 S. E. 708, 20 Ann. Cas. 342); *Morris* v. *Smith,* 153 *Ga.* 438 (112 S. E. 468)." See also *Tucker* v. *Roberts,* 151 *Ga.* 753 (108 S. E. 222). In the case under consideration it appears that no formal election by ballot for trustees in the Patmos School District was held and returns of the election made to the board of education of the county, as provided in the act authorizing election of trustees. After the school district was created a report was circulated that there would be an election for trustees at a stated time and place in the district. At the time and place mentioned there was a meeting at which the trustees were selected by a rising vote. A witness testified that he heard there was going to be an election for Patmos School District trustees, and he went over there, and the trustees were elected. "Harris was the three-year man, Wingate the two-year man, and Cotton the one-year man. There was no question about the manner in which they were elected." "I never counted the people that was there. There was only a very few. There might have been fifteen. They elected the trustees by a rising vote; some rose and some held up their hands." There was no evidence that the trustees so selected were commissioned by the board of education; but there was evidence that they proceeded to act as trustees of the district, that they were generally recognized as such, that in such capacity they were petitioned by the voters of the district to call the election for issuance of bonds which are involved in this case, and that acting on such petition they called the election and performed all other acts with respect thereto as provided in the statute. In these circumstances, whether or not the trustees were legally elected under the principles of law applied in the above-cited cases, the trustees were de facto officers, and their action was not subject to collateral attack.

6. The intervenors insisted, that it was not proved that two

thirds of the duly registered and qualified voters cast their ballots in favor of bonds; and that the lists were not purged by the registrars, nor was the list of duly registered qualified voters delivered by the registrars to the clerk of the superior court, nor did the tax-collector furnish a certified list of such registered voters in the school district to the managers of the election ten days before such election was held; also, that the petition to the board of trustees for an election could not be sustained, because the law required one fourth of the registered and qualified voters to petition for such election, and it was impossible to determine whether one fourth of such voters filed such a petition, in the absence of any list of registered qualified voters; also, that two thirds of the registered qualified voters did not vote for the bonds, and that the voters who were registered did not take the voter's oath, and, when the lists were purged of those who were not qualified, a sufficient number of duly registered and qualified voters did not cast their ballots for bonds to prevail in the election. · In *Harrell* v. *Whigham,* 141 *Ga.* 322 (2) (80 S. E. 1010), it was held: "Where statutory proceedings are brought for the purpose of validating municipal bonds, under the Civil Code (1910), § 445 et seq., and are contested by citizens who become parties thereto and deny the truth of the substantial allegations of the petition, the burden is on the State, acting through its solicitor-general, to prove the material facts which are requisite to obtain validation; and where there is a total absence of such proof, it is error for the court to render judgment validating the bonds." In *Chapman* v. *Sumner School District,* 152 *Ga.* 450 (2, *e*) (109 S. E. 129), it was held: "No person is lawfully entitled to vote in a school-district bond election held under section 143 of the ' Code of School Laws of Georgia ' (Acts 1919, pp. 228, 343), whose name does not appear on any list of the county registrars filed with the clerk of the superior court of the county, showing the names of the registered voters of the county entitled to vote." Further: "A person is not lawfully entitled to vote in a school-district bond election held under section 143 of the 'Code of School Laws of Georgia,' whose name appears on the certified list of registered voters furnished by the ordinary to the managers of the election, and also appears on the general list of the county registrars filed with the clerk of the superior court, showing the registered voters of the county entitled to vote, and also appears on the voters' book of the tax-

collector of the county, where, in an attack upon the validity of his vote in the proceeding to validate such bonds, it is shown by positive and uncontradicted testimony that the oath prescribed for voters by sections 36, 40, 41, 42, 43, 46, and 47 of the Political Code of Georgia was not read by, or read or mentioned to, such person when he signed the voters' book, and that he made no such oath or affirmation, and except as herein stated he is otherwise a qualified voter under the laws of Georgia.' The fact that one's name is signed to the oath in the voters' book, prescribed in the Civil Code (1910), §§ 36, 40, et seq., will be prima facie evidence that the oath was administered as required by law, a substantial compliance with which shall be sufficient. *Brown* v. *Atlanta,* 152 *Ga.* 283 (109 S. E. 666). 'The tax-collector or his clerk shall in no instance permit a person to sign the voters' books or any separate printed oath unless such person shall have actually made the oath before him thereon contained, and a violation of this section by either the tax-collector or his clerk shall be a misdemeanor.'" See also *Stephens* v. *Ball Ground School District,* 153 *Ga.* 690, 694 (113 S. E. 85).

Bearing in mind the substance of these decisions we consider the facts in the instant case. The tax-collector of Baker County testified that he had been tax-collector since the fall of 1918; that he signed a paper on the 23d day of June, certifying that certain persons were entitled to vote, but he did not mean to say that these people whose names appeared on the statement had paid their taxes six months prior to the election. The witness had never administered the oath to any one himself and never thought the taking of any oath was necessary. The names appearing on the exhibits A, B, and C of the bill of exceptions did appear on the permanent voters' book of Baker County called the 1916 book. Exhibit A contains the list of names asking that the election be held for bonds in the Patmos School District. Exhibit B contains the alleged list of qualified voters. Exhibit C contains the supplemental list. The number of votes cast for bonds in the election was 107, and the number voting against bonds was 49. The tax-collector also testified that he did not prepare and deliver to the election managers of the Patmos School District a list of legal registered and qualified voters ten days before that election, that the registrars of Baker County never, at any time before the holding of that bond election, prepared a list of the legal registered and qualified voters and gave it to

him, and the registrars did not send to him for any certificate for the election managers as to qualified voters prior to the alleged bond election; that one of the trustees for Patmos School District came to him and wanted him to certify to a list of registered qualified voters, and he told him he did not think it was necessary, but he signed it; that it is true that after the election for bonds some of the women registered; that a large number of voters who applied for an election to be held, and also a large number of voters in the election for bonds who voted both for and against them, were disqualified by reason of nonpayment of taxes; and that there were a large number of disqualified voters whose names appear on the exhibits A, B, and C referred to above, which names appear on the permanent voters' book of Baker County.

One of the registrars of the county testified that since he had been registrar there had been but three people in the county who ever applied to him to have their names put back on the list of registered voters after they had become defaulters. He had been a registrar for five or six years. The registrars did not get together and prepare a list of registered qualified voters for the Patmos School District and purge it of those who were tax defaulters or disqualified to vote, and the registrars did not prepare a list of registered and qualified voters of Patmos School District and turn it over to the tax-collector for the bond election. The registrars did not furnish any list of voters at all to the tax-collector. The list (Exhibit C) bearing date of July 22d, 1922, is the only list that was ever prepared at all for the bond election by the registrars of Baker County, and that contains mainly women's names. The list was never filed with clerk of the superior court. The registrars put the names appearing upon the supplemental list (Exhibit C) upon the general book that was filed with the clerk after the bond election; but he was not positive that this was done. The registrars never did, within five days after completing the list of voters, prepare and file in the clerk's office a complete list of them. The registrar further testified that in purging the list, if a person's name appeared upon the book whose name ought not to be there, a line was struck through it, and that makes the permanent voters' book.

Exhibit C referred to contains the names of many women; and while the brief of counsel says it contains 68 to 69 names, it contains about 88 names, mainly women. The defendant in error in

his brief concedes that these names upon Exhibit C were disqualified voters, and yet their names appeared upon the general registration book. On August 26, 1920, the amendment to the constitution of the United States went into effect, providing for suffrage of women. Prior to that time of course they could not vote in Georgia. The tax-collector, who says he was tax-collector from the fall of 1918 through 1922, says he never administered an oath to a voter, and did not know it was necessary. It has already been stated that the registration book contains many names, in fact a large proportion of the names of persons voting in the election who were disqualified to vote. Under these conditions can we hold that the appearance of a name upon the general registration book is satisfactory evidence of the qualification of the voter? The burden is upon the State to prove that two thirds of the qualified registered voters cast their ballots for bonds. The constitution requires that the will of two thirds of the citizens shall manifest itself in favor of a mortgage being placed upon their property in the shape of bonds. Experience has demonstrated that debts are easily made and often hard to pay; and therefore the rigid conditions set forth in the laws demand a clear and undoubted expression of the wish of the requisite number of voters to carry the issuance of bonds. This court indicated such to be the law, in the decision of *Chapman* v. *Sumner School District,* supra. We must hold, therefore, under the evidence presented in this record that the State has failed to carry the burden imposed upon it by the law for the validation of bonds.

In order to preserve the history of the legislation, it may be stated that in 1921 (Acts 1921, p. 221) the act of August 19, 1919, was so amended as to provide that the tax-collector should furnish the certified list of registered voters in lieu of the ordinary, in cases of elections for school bonds.

This brings us to the conclusion that the judgment of the trial court must be reversed on the ground that the evidence was insufficient to support the judgment validating the bonds.

*Judgment reversed. All the Justices concur.*

RUSSELL, C. J. I concur in the judgment of reversal, but dissent from the ruling in the fifth headnote and in the corresponding division of the opinion.

BECK, P. J. I concur in the judgment of reversal, but do not concur in so much of the ruling made in the sixth division of the

opinion as reaffirms the decision in the case of *Chapman* v. *Sumner School District,* 152 *Ga.* 450 (2 e), as followed in *Stephens* v. *Ball Ground School District,* 153 *Ga.* 690.