COLE *et al. v.* McCLENDON, ordinary.

109   183
115   272

1. Even if examination of folded ballots by the managers of a prohibition election did have the effect of intimidating qualified voters from casting their ballots, it will be no ground of contesting the election, unless the petition for contest sets forth the names of the persons thus deterred from voting, and alleges that they would have voted on the losing side of the question submitted at the election, and that the number of voters

so intimidated was such that the result of the election would have been different if they had voted.

2. In a prohibition election held under the provisions of section 1541 et seq. of the Political Code, qualified voters of the county, residing in portions of the county where the sale of liquor is already prohibited under local or general laws operative in territory less than the limits of a county, may nevertheless vote.

3. Where the names of voters appear upon the official registration lists, even though there may have been irregularities in the entering of their names thereon, they are nevertheless entitled to vote, if qualified voters and entitled to register; and a contest which merely brings in question the regularity of putting their names on the registration lists is not sufficient, unless it alleges facts showing that they could not in any event have been properly so entered.

Argued October 10, — Decided November 2, 1899.

Contested election.   Before Judge Harris.   Coweta superior court.   March term, 1899.

*W. Y. Atkinson* and *H. A. Hall,* for contestants.
*A. D. Freeman, R. W. Freeman,* and *W. A. Turner,* contra.

COBB, J.   An election was held under the provisions of section 1541 et seq. of the Political Code, in the county of Coweta, to determine whether the sale of liquor should be allowed in that county.   The ordinary declared the result of the election as being "against the sale."   A contest was instituted in the superior court, the petition setting forth various grounds as the "cause of contest."   Upon demurrer all of the grounds of contest, except three, were stricken.   Upon the hearing of the grounds not stricken, the judge determined them against the contestants and approved the action of the ordinary.   The contestants excepted to the judgment sustaining the demurrer. Only those grounds which were insisted on in the argument in this court will be dealt with in this opinion.

1. The contestants alleged that at one of the precincts a manager of the election opened and inspected all the folded ballots as they were received, so as to ascertain how each person voted; and that this had the effect of intimidating other voters and deterring them from voting according to their individual convictions; it being further alleged that many voters had been told by their employers that if they voted "for the

sale," they would be discharged. Neither the names nor number of the voters claimed to have been thus prevented from voting were set forth. The policy of the law of this State requires that each qualified voter shall be allowed on a day of election to deposit a ballot expressive of his individual views on the question involved, and that no one shall ever, under any circumstances, either at the election or afterwards, examine his ballot for the purpose of ascertaining how he has voted, save only in case of a contest of the election. Any and all means that are capable of being resorted to which have or may have the effect of destroying the right of the individual elector to vote as he desires are unlawful and reprehensible in the extreme, and when the person guilty of such conduct is himself a manager of the election, no words of condemnation are too strong when used to characterize his conduct. Such conduct will not, however, vitiate the election, nor will it have the effect of changing the result, unless it be clearly shown who were the voters thus deterred from voting, and that if they had voted they would have voted on the losing side and that their votes would have changed the result of the election. The allegations of the ground of contest not being in conformity to this rule, there was no error in striking the same on demurrer.

2. Construing the general local option liquor law (Political Code, §§ 1541-1550) as a whole, the conclusion is necessarily reached that the legislative intention was that the people of the different counties of the State in which the sale of liquor was then authorized should in each county be permitted to determine whether the sale of liquors should be allowed within the limits of the county. No provision is made for an election in territory less than that embraced within the limits of a county. The petition for election must be signed by a designated number of voters of a "county;" license to sell liquors in the "county" shall not issue after the petition is filed and before the result of the election has been declared; the notice of the election, as well as the result of the election, is published in the "official organ of the ordinary or sheriff of the county"; elections shall not be held "in the same county" oftener than once in four years; and if the result of the elec-

tion is "against the sale," liquors can not be lawfully sold "within the limits of such county." The scheme of the act being to submit the question to the people of the different counties, all persons qualified to vote for members of the General Assembly are entitled, by the very terms of the act, to vote. As no person can so vote who has not resided six months in the county, the proviso to section 1543, fixing the qualifications of voters, which declares that a voter must "have actually resided within the territorial limits to be affected, at least six months next preceding the election," is mere redundancy. It is conceded that the election can only be held for counties, but it is contended that in such election no person can vote who resides in any portion of the county where the sale of liquor is prohibited by high license, local option, or other legislation. The following section of the act is cited as authority for this contention: "No election shall be held under the provisions of this Chapter for any county, city, town, or any other place in this State where by law the sale of spirituous liquors is already prohibited either by high license, local option, or other legislation, so long as these local laws remain of force." It is contended that the words "county, city, town, or any other place in this State," and the use of the words "within the limits of such designated places" in section 1541, as well as the words "within the territorial limits to be affected" in section 1543, all indicate that the legislature intended that localities where the sale of liquor was already prohibited were not to be affected, and therefore that persons residing in such localities should not be allowed to participate in any election held under the act. This contention is easily disposed of when we keep in view the scheme of the act as above indicated. The words "city, town, or any other place" must be rejected as meaningless surplusage. The expression "designated places" can only refer to counties, and the other phrase relied on is, as we have seen, a mere redundancy, and can not mean other than a county. This view of the matter is strengthened when we refer to the journal of the General Assembly, where it appears that the original bill provided for elections in counties, cities, and districts, and by amendment the scheme

of the act was changed to elections by counties only. See House Journal 1884, pp. 505, 531; House Journal 1885, p. 81. The language now relied on to change the scheme of the law is such as is consistent with the scheme of the original bill, and was evidently left in the act by inadvertence or mistake. The law as it now stands authorizes elections by counties, and when such elections are held any person can vote who is qualified to vote in a county election. A local law which antedates the law under consideration, prohibiting the sale of liquors within a county, will prevent an election from being held, but neither a local law prohibiting the sale of liquors within territory less than a county, nor a general law having the same effect, will prevent an election under the general local option liquor law from being held, nor be any obstacle in the way of any elector in the county voting at such election, notwithstanding he may reside in a part of the county in which the sale of liquor is already prohibited by virtue of either a local or general law operative in territory of less extent than the whole county. It follows, therefore, that an election under the general local option liquor law could be lawfully held in the county of Coweta, and that at such election every person in the county qualified to vote for members of the General Assembly could vote, notwithstanding under the operation of local and general laws the sale of liquor was prohibited in every district in the county save the one in which the city of Newnan was located, there being in existence no local law of older date than the general local option liquor law which had the effect of prohibiting the sale of liquor throughout the entire limits of the county of Coweta. See in this connection the opinion of McCay, Judge, in Weil v. Calhoun, 25 Fed. Rep. 865.

3. The qualifications of an elector are set forth in the constitution of this State, and that instrument declares that the General Assembly may provide for the "registration of all electors." Civil Code, §§ 5737-8. The law carrying into effect this grant of power is contained in the act of 1894 (Political Code, § 35 et seq.). The first section provides that no person shall vote in any election in this State "unless such person

shall have been registered as [therein] provided." The plan
for registering the voters therein provided is, in substance, as
follows:   Each person is required to sign in the "voters book,"
or on a separate sheet, an oath administered by the tax-collector
or his clerk, setting forth that the person signing is, or will be
on the day of election, qualified to vote, so far as age and resi-
dence is concerned, and that he has paid all taxes required by
law to qualify him as a voter, and that he is not disfranchised
from voting by reason of any offense committed against the laws
of the State.   The tax-collector furnishes to the county registrars
a list of names appearing on the voters books, and separate sheets
for the year.   The tax-collector, ordinary, and clerk of the supe-
rior court, on or before July 1 of each year, furnish to the county
registrars a list of all persons living in the county the first day of
the year, who are shown by the public records of the county, or
otherwise known to them, to be disqualified from voting for any
cause.   The county registrars are required to examine the list of
voters, as well as the list of persons claimed to be disqualified, and
determine (hearing evidence, if necessary) whether any per-
son whose name appears as having taken the oath required by
law is not qualified to vote, as well as whether persons not al-
lowed by the tax-collector, or his clerk, to sign the oath were
in fact disqualified from voting.   The county registrars, after
determining these questions, make up a list of the registered
voters in each militia district and city ward in the county, and
the lists thus made up are furnished to the managers of the
election.   The law distinctly declares that "All persons whose
names appear on the list of registered voters placed in posses-
sion of the election-managers, and no others, shall be allowed
to deposit their ballots according to law, at the voting precinct
of the militia district or city ward in which they are registered."
Political Code, § 60.   The list of registered voters furnished
by the registrars to the managers of the election absolutely con-
trols the managers, and they have no power or authority to al-
low any one to vote whose name is not on the list, nor to re-
fuse any one the right to vote whose name is on the list.   The
purpose of the registration law is to obtain a list of the quali-
fied voters, in order that such voters may exercise the privilege

of voting on the day of election. If the name of a person who is undoubtedly a qualified voter is irregularly or even fraudulently entered upon the list furnished by the tax-collector to the county registrars, and his name is placed upon the list of registered voters by the registrars, his right to vote, as well as to have his vote counted, would be complete. The judgment of the registrars on the question as to whether or not he was entitled to be entered as a registered voter would be conclusive, certainly in a case where they acted in perfect good faith and ignorantly of the fraud perpetrated upon the tax-collector or his clerk.

Section 625 of the Penal Code provides that any person "who shall vote without having signed the oath provided by the tax-collector in said voters book, unless his name shall have been entered on the lists of legal voters as provided by law, shall be guilty of a misdemeanor." The latter clause of the section, saving a qualified voter who has improperly entered as a registered voter from indictment for voting as such, is strongly indicative of a legislative intention to make the judgment of the registrars conclusive on such matters. If the name of a person who is not a qualified voter is entered upon the list of registered voters, he would not become a qualified voter. While the managers of the election would be authorized to receive a ballot from him, on a contest of the election the vote would not be counted; and the person so voting would be subject to indictment for illegal voting (Penal Code, § 629), as well as for a violation of the registration laws. Penal Code, § 625. It was claimed in the present case that the names of a number of persons were entered on the voters book without the authority of the tax-collector or his clerk, some by the tax-receiver and some by persons unknown; that some of those whose names were on the voters book never took the oath prescribed by law, but that the tax-collector included those names on the lists furnished to the county registrars, and such registrars, in ignorance of how they were entered on the voters book, included their names in the list of registered voters, and that such illegally registered persons voted at the election and voted against the sale, and that their number was such that if their votes were thrown out the result of the election would be changed. The

name of each person claimed to have been thus illegally entered as a registered voter is set forth in the ground of contest, but there is no allegation that these persons did not possess all the qualifications required by the constitution, nor is it alleged that any of them were disqualified from voting for any reason.   The failure to make such allegation was fatal to the ground of contest, and there was no error in dismissing the same on demurrer.

*Judgment affirmed.   All the Justices concurring.*