## STEPHENS *et al. v.* BALL GROUND SCHOOL DISTRICT *et al.*

1. At an election held on October 9, 1920, voters otherwise qualified were not disqualified by the fact that they were females.
2. Under the laws fixing the qualifications of electors and regulating the registration of voters, although the name of a person may appear on the registration list he is not a qualified voter if he has not taken the oath required by law, or if his name was entered on the list by some one without authority to make the entry.
3. The mere fact that the members of the board of education of a school district requested many of the registered qualified voters of that district to sign a petition for a call of an election to determine whether bonds should be issued to build and equip a schoolhouse for the district did not render illegal and void an election duly called and held according to the law applicable.
4. That two elections previously held in a school district had resulted against local taxation to maintain schools and build a schoolhouse therein, and that a majority of the taxpayers and voters of territory cut off (in legal exercise of the discretion of the county board of education) from the original district were opposed to such taxation, did not invalidate the election held in the district as so changea, although the change in district lines may have been made " for the express purpose of decreasing the number of votes against the issuance of said bonds." Nor was the legality of the district or the validity of the election affected by the fact that the board had refused requests of residents and taxpayers of another part of the district, who where opposed to the issuance of bonds, to cut off that part from the original district.

No. 2830. JUNE 19, 1922.

Validation of schoolhouse bonds. Before Judge Blair. Cherokee superior court. September 1, 1921.

*Morris & Hawkins,* for plaintiffs in error.

*John S. Wood, solicitor general,* and *Wood & Vandivere,* contra.

ATKINSON, J. On July 2d, 1921, John S. Wood as solicitor-general of the Blue Ridge Circuit, in behalf of the State of Georgia, instituted an action in the superior court of Cherokee County, against the Ball Ground School District and the members of the board of trustees for such school district, to validate a proposed issue of bonds for the purpose of erecting a schoolhouse, on the basis of an election by the voters of the district, held October

9, 1920. The consolidated returns of the election showed that the requisite number of votes as required by statute had been cast in favor of the issuance of the bonds. The defendants filed an answer which in effect admitted all of the allegations of the petition, and united in the prayer for a judgment validating the bonds. Certain persons as citizens and taxpayers of the district filed an intervention contesting and attacking the validity of the election, and objecting to the validation of the bonds. The plaintiffs and defendants demurred to each of the paragraphs of the intervention, except paragraph number nine, which attacked the votes of certain persons on the ground that such persons did not reside in the district at the time of the election. At the hearing the judge sustained the demurrer, except as to the tenth paragraph of the intervention, which attacked the votes of named persons cast in favor of the bonds on the ground that such persons had not paid their poll tax, and entered judgment on the petition and answer validating the bonds. The intervenors excepted.

On account of the decision of this court in *Davis* v. *Orland Consolidated School District*, 152 *Ga.* 76 (108 S. E. 466), decided since the rendition of the judgment complained of, the assignments of error based on alleged unconstitutionality of the provisions of the statute under which the election was held were expressly abandoned in the brief of counsel for plaintiffs in error.

1. In the fifth paragraph of the intervention it was alleged that 157 females, whose names were stated, voted in favor of the issuance of the bonds, and that the votes so cast were illegal and should not have been counted, on the ground that " females are not qualified voters in the State of Georgia." The election occurred on the 9th of October 1920; the 19th amendment to the constitution of the United States having become automatically operative August 26, 1920. Such amendment to the constitution removed all disqualifications of females to vote in this State, theretofore existing on account of their sex. *Brown* v. *Atlanta,* 152 *Ga.* 283 (3), 294 (109 S. E. 666).

2. In the sixth paragraph of the intervention it was alleged that 45 persons, whose names were stated, voted in favor of the issuance of bonds, and that such votes were illegal and should not have been counted, for the reason that the several persons so casting such votes have never been legally registered, " in that

their names had been placed upon the registration book and regis-
tration lists of said county by persons other than the tax-collector
of said county or any clerk employed by him and authorized by him
to receipt for taxes in the usual course of his employment," and
for such reason such persons were not " legally qualified registered
voters entitled to vote in said election." In the seventh paragraph
of the intervention it was alleged that to none of the persons whose
names were set forth in the two preceding paragraphs of the in-
tervention was the oath prescribed in § 36 of the Code of 1910 ad-
ministered by any person authorized to do so, nor " did any of said
named persons actually make the oath referred to before his or
her name was entered on the registration book," and for said
reasons none of such persons were qualified voters. In the amend-
ment to the constitution of this State proposed by the act of the
legislature (Ga. L. 1908, p. 27), and ratified at the general election
on October 7, 1908 ( Civil Code, §§ 6395 et seq., 34 et seq.), it
is provided in paragraph 1: " After the year 1908, elections by
the people shall be by ballot, and only those persons shall be al-
lowed to vote who have been first registered in accordance with
the requirements of law." In paragraph 2 it is provided: " Every
male citizen of this State who is a citizen of the United States,
twenty-one years old or upwards, not laboring under any of the
disabilities named in this Article, and possessing the qualifications
provided by it, shall be an elector and entitled to register and vote
at any election by the people: Provided, that no soldier, sailor,
or marine in the military or naval service of the United States
shall acquire the rights of an elector by reason of being stationed
on duty in this State." In paragraph 3 it is provided: " To en-
title a person to register and vote at any election by the people, he
shall have resided in the State one year next preceding the election,
and in the county in which he offers to vote six months next pre-
ceding the election, and shall have paid all taxes which may have
been required of him since the adoption of the Constitution of
Georgia of 1877, that he may have had an opportunity of paying
agreeably to law. Such payment must have been made at least six
months prior to the election at which he offers to vote, except when
such elections are held within six months from the expiration of
the time fixed by law for the payment of such taxes." In para-
graph 4 other qualifications are enumerated as necessary to regis-

tration as an elector, which are not involved and not material to be stated in this case. The method of registration of voters provided by law as set forth in the Civil Code (1910), §§ 36, 40, 41, is as follows: " At the time when he begins the collection of taxes for each year, the tax-collector of each county in this State shall open a book or books, to be designated as ' voters books,' containing, on the first page thereof, or near the first page thereof, the following oath, to wit: ' I do swear, or affirm, that I am a citizen of the United States; that I am twenty-one years of age, or will be on the — day of — of this calendar year; that I have resided in this State for one year, and in this county for six months, immediately preceding the date of this oath, or will have so resided on the — day of — of this calendar year; that I have paid all taxes which, since the adoption of the Constitution of 1877, have been required of me, except taxes for this year; that I possess the qualification of an elector required by the constitutional amendment adopted in 1908; and that I am not disfranchised from voting by reason of any offense committed against the laws of the State. I further swear, or affirm, that I reside in the — district, G. M., or in the — ward of the city of — at number — on — street; my age is —, my occupation —.' " " Said tax-collector, or any clerk employed by him and authorized by him to receipt for taxes in the usual course of his employment, is hereby empowered to take charge of said voters' books, and to administer said oath. When the signature of any person is not clearly legible, the officer in charge of the voters' book shall, at the time the signature is made, write out the same in clearly legible letters opposite or under said signature." " Any male person desiring to be registered as a voter may apply to the tax-collector, or his clerk as above described, and after reading said oath, or having same read to him, shall subscribe the same by signing his name in said voters' book, underneath the written or printed oath above described, or on some page following the one on which said oath is printed or written; a memorandum or entry of the district or ward (giving the name of the street, and the number of his residence, if any, his age and occupation) in which affiant lives being first made by the officer in charge of the book, or by the affiant above the place of signature of the affiant. And when affiant is not twenty-one years old

at the date of taking the oath, a similar entry or memordandum shall in like manner be made, showing the date in that year when he will reach twenty-one; and when the affiant has not resided in the State one year or in the county six months at the date of taking the oath, a similar entry or memorandum shall be made, showing the date in that year when he will have resided in the State one year and in the county six months."

(*a*)  The qualification of electors and regulations with respect to registration of voters being as indicated above, although a person's name may appear on the registration list he is not a qualified voter if he has not taken the oath required by law, or if his name was entered on the registration list by some person without authority to make the entry.  *Chapman* v. *Sumner Consolidated School District,* 152 *Ga.* 450 (109 S. E. 129).

(*b*)  The case of *Cole* v. *McClendon,* 109 *Ga.* 183 (34 S. E. 384), was decided prior to the amendment to the constitution quoted above in part, which adds, among others, those qualifications quoted above to qualifications of electors theretofore existing.

(*c*)  Accordingly the allegations of paragraphs six and seven of the intervention were sufficient to allege that the votes cast by the persons therein named and referred to were illegal and should not have been received by the managers or counted in ascertaining the result.

3.  Where a petition signed by one fourth of the registered qualified voters of a school district was filed with the board of trustees or board of education of such school district, asking that an election be called for the purpose of determining whether bonds should be issued for the purpose of building and equipping a schoolhouse for the district, and such election was duly called and held in accordance with the provisions of the "Code of School Laws" (Ga. Laws 1919, p. 288 et seq.), the mere fact that the trustees requested such voters or many of them to sign such petition did not render the election illegal and void.

4.  A county board of education has the right, when "local conditions" in their judgment make it necessary for the best interest of citizens and taxpayers to be affected thereby and a majority of whom desire it, to change the line or lines of any school district at any time, when in their judgment the best in-

terest of a school requires such change. Ga. Laws 1919, p. 288, 326, sec. 92. The mere fact that two elections previously held in a school district had resulted against local taxation for the maintenance of schools in the district and the building of a schoolhouse therein, and that a majority of the taxpayers and voters of certain territory cut off from the original district were opposed to such taxation, did not invalidate the election for local taxation held in the district as so changed, although such change in the district may have been made " at the instance of the trustees for the express purpose of decreasing the numbers of votes against the issuance of said bonds." *Moore* v. *Denny,* 150 *Ga.* 741 (2) (105 S. E. 306). And of course it would not affect the legality of the district or the validity of the election that the board of education refused the requests of residents and taxpayers of another portion of the district, who were opposed to the issuance of bonds, to cut off that portion of the district from the original district. The board of education have a discretion to do the acts complained of, and the exercise of such discretion in the circumstances would not amount to fraud.

5. Applying the principles stated in subdivisions (a), (b), and (c) of the second division, supra, the judge erred in dismissing the intervention on demurrer, and in rendering judgment validating the bonds.

*Judgment reversed. All the Justices concur, except Beck, P. J., dissenting from the rulings in (a) and (c), above.*