## DICKS *v*. DICKS.

No. 9684.   JULY 13, 1933.

*Foley & Chappell,* for plaintiff in error.
*George C. Palmer* and *Ed Wohlwender Jr.,* contra.

GILBERT, J. The exceptions are solely to the rulings of the court on a motion to nonsuit, and a motion to dismiss the case for lack of jurisdiction, first, on the ground that the plaintiff "had not been a bona fide resident of the State twelve months before the filing of the application for divorce," and second, because the defendant was not a resident of the State of Georgia and not within the jurisdiction of the court. The motion to dismiss the case because the evidence showed a lack of jurisdiction is equivalent to a motion to nonsuit on the same ground.

The Civil Code (1910), § 2950 declares: "No court in this State shall grant divorce of any character to any person who has not been a bona fide resident of the State twelve months before the filing of the application for divorce." In *House* v. *House,* 25 *Ga.* 473, this court held: "A court has no jurisdiction over a case in

which neither of the parties is, or has ever been, in the State, or is a citizen or a resident of the State, or the owner of property in the State." In 19 C. J. 26, § 36, it is said: "The word 'residence' as used in divorce statutes should be construed as equivalent to 'domicile,' but the qualification of citizenship is not exacted." This court, in *Cochran* v. *Cochran*, 173 *Ga*. 856, 862 (162 S. E. 99), discussed the meaning of the term "residence," citing decisions from the Supreme Court of the State of Nevada, where "residence" was construed as meaning domicile within Nevada, and it was held that such domicile of one of the parties was essential to the power of the courts of that State to dissolve the marital bond. This court said that the ruling on that question by the Supreme Court of Nevada did not substantially differ from the principles declared in a great majority of the American States. In deciding the issues raised in *Cochran* v. *Cochran* this court treated the provision as to residence as meaning the same as if the word domicile had been used; therefore, in this case, the term "residence" is treated as synonymous with the word "domicile." One filing a petition for divorce must allege and prove that he has been a bona fide resident of the State for the length of time required by law. The burden of proof is upon the applicant. Jurisdiction of the subject-matter can not be conferred by consent. "No verdict or judgment by default shall ever be taken in a suit for divorce, but the allegations in the petition must be established by evidence before the juries." Civil Code (1910), § 2959; *McConnell* v. *McConnell*, 135 *Ga*. 828, 830 (70 S. E. 647).

It is contended in the brief of the plaintiff in error that the plaintiff, being an officer in the United States army stationed on the government reservation known as Fort Benning, is not a resident of the State of Georgia, and that as a matter of law it was and is impossible for him to become such so long as he is in the United States army residing on a government reservation. The act of the General Assembly approved August 23, 1927 (Ga. Laws 1927, p. 352), in which the lands within Fort Benning were ceded to the United States, contains the provisions that "exclusive jurisdiction in and over any land so acquired by the United States shall be and the same is hereby ceded to the United States for all purposes, except that the State retains the right to serve thereon civil and criminal processes issued under authority of the State." A statute such as

that quoted "is not incompatible with the exclusive jurisdiction of the Federal government, but is made to prevent such places from becoming sanctuaries for debtors and criminals." Foley v. Shriver, 81 Va. 568. The constitution of the United States, art. 1, sec. 8, par. 17, provides that the Congress shall have power "to exercise exclusive legislation in all cases whatsoever, over such district (not exceeding ten miles square) as may, by cession of particular States, and the acceptance of Congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." In Foley v. Shriver, supra, discussing that clause of the constitution, the court said: "The State legislature having given the required consent, and the United States having purchased the land in question, the United States have acquired, under the Federal constitution, exclusive jurisdiction over the ceded lands, and they are no longer a part of the State of Virginia, and are not subject to the jurisdiction of the State courts. Persons residing there are not citizens of Virginia; the property situated there is not subject to the control or disposal of any State court."

In Bank of Phœbus v. Byrum, 110 Va. 708 (67 S. E. 349, 27 L. R. A. (N. S.) 436, 135 Am. St. R. 953), it was said: "A non-resident who, as an enlisted soldier of the United States, is stationed upon a tract of land which has been secured by the Federal Government within a State for military purposes, does not become a citizen of such State, so as to defeat the right of a creditor to issue an attachment against him as a non-resident, although State process may be served within the reservation." The constitution, above quoted, properly construed, does not altogether deny a soldier in our army of the right enjoyed by others of changing his domicile from one State to another State because he is stationed on a government reservation. He should not unnecessarily be thus discriminated against, and limited in matters not connected with his status as a soldier. Constitutional provisions should not be so construed unless the provisions clearly require it. The United States constitution, fourteenth amendment, declares: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they re-

side." Of course "residence" and "citizenship" are not identical terms, within the meaning of the constitution. Steigleder *v.* McQuesten, 198 U. S. 141 (25 Sup. Ct. 616, 49 L. ed. 986). The petitioner was born in South Carolina, and is a citizen of the United States. South Carolina is his domicile of origin. When he entered the army he did not as a matter of law lose his domicile in South Carolina. Nor did he as a matter of law become a domiciliary resident of another State. The Federal government, of course, has exclusive authority over army reservations, and determines who shall reside on them. In this and other respects army reservations differ from the District of Columbia. The right of the soldier born in South Carolina to change his domicile to the District of Columbia would hardly be questioned. He may not have been within the State of South Carolina in many years. He may have no fixed and definite dwelling, hotel, boarding or other house as an exact place designated as his dwelling. Perhaps a majority of persons in the United States do not own any such designated dwelling. This is established by the census enumeration of 1930. Since 1930 it is safe to assume that the non-home owners have largely increased. The following excerpts are quoted from Proposed Final Draft No. 1, "Restatement of the Law of Conflict of Laws" of the American Law Institute: Chapter 2, topic 2, § 13: "Every person has at all times one domicil, and no person has more than one domicil at a time." Chapter 2, topic 3, § 25: "A domicil once established continues until it is superseded by another domicil." § 21: "The intention required for the acquisition of a domicil is an intention to make a home in fact, and not an intention to acquire a domicil." § 22: "For the acquisition of a domicil of choice the intention to make a home must be an intention to make a home at the moment, not to make a home in the future." § 18: "A person can not acquire a domicil of choice in a place without being physically present there; but a home in a particular building is not necessary for the acquisition of a domicil." Chapter 2, topic 1, § 11: "A question of domicil arising in litigation is determined by the law of the forum." There is no law or provision of the constitutions, State or Federal, which will permit the loss of citizenship merely because he is a United States soldier. Civil Code, §§ 6381, 6700.

There is ample authority for holding that mere residence by a United States soldier on a government reservation, nothing more

appearing, will not result in changing his residence from his former residence in another State to the State within which the soldier is then residing on a government reservation. Pendleton *v.* Pendleton, 109 Kan. 600 (201 Pac. 62). In that case it was not decided whether a soldier residing on a military reservation could establish residence or domicile in the State. It was merely decided that the residence on Fort Riley was "temporary," and that the court was without jurisdiction. Commonwealth *v.* Clary, 8 Mass. 72. In Harris *v.* Harris, 205 Iowa, 108 (215 N. W. 661), a suit for divorce brought by an officer residing at a United States army post, the 'controlling question was whether such officer can "acquire a domicile in the army post or camp where he is stationed, even though he establishes his family there;" and it was said: "The numerical weight of judicial authority answers the question in the negative." Citing Stevens *v.* Allen, 139 La. 658 (71 So. 936, L. R. A. 1916E, 1115); Radford *v.* Radford, 26 Ky. L. R. 652 (82 S. W. 391); State ex rel. *v.* Judge of Ninth Judicial Circuit, 13 Ala. 805; Mead *v.* Carrol, 6 D. C. 338; Pendleton *v.* Pendleton, supra; Inhabitants of Brewer *v.* Inhabitants of Linnaeus, 36 Me. 428; Tibbitts *v.* Townsend, 15 Abb. Prac. (N. Y.) 221; Graham *v.* Commonwealth, 51 Pa. 255 (88 Am. D. 581); Williams *v.* Saunders, 5 Cold. (Tenn.) 60; Henderson *v.* Ford, 46 Tex. 627; Yelverton *v.* Yelverton, 1 S. & T. 574; Attorney-General *v.* Napier, 20 L. J. Ex. 173; In re Macreight, 30 L. R. Ch. D. 165; 19 C. J. 418. "A naval officer can not acquire a domicile at his station or on his vessel, for the same reason that his going and staying at his post, when so ordered, are not a matter of his choice. Knowlton *v.* Knowlton, 155 Ill. 158, 39 N. E. 595 (reversing 51 Ill. App. 71); Brown *v.* Smith, 15 Beav. 444." In Gallagher *v.* Gallagher (Texas), 214 S. W. 516, the controlling question was the same as in the Harris case, supra. Petitioner "had for over a year intended to make San Antonio his permanent home as soon as he could retire, which would be in 1919." Before entering the service he was a merchant in New York.

In Lowe *v.* Lowe, 150 Md. 592 (133 Atl. 729, 46 A. L. R. 983), two Justices dissenting, it was said that "persons residing upon land purchased by the Federal government with consent of the State within which it lies, for military purposes, are not such residents of the State as will entitle them to file a bill for divorce in any of the courts of the State, where the State statute limits the

right to file such bill to residents." Both plaintiff in error and defendant in error cite the case of Lowe v. Lowe, the plaintiff in error relying upon the majority opinion, the defendant in error relying upon the minority opinion. Decisions of the courts of last resort in other States, as a general rule, render valuable aid in solving similar questions by this court. They constitute persuasive authority in proportion to the strength of the reasoning. Where the decision represents the views of the entire court, that fact has its due weight. On the other hand, where a court is divided in opinion, the view of the minority, as well as that of the majority, will be valued according to their respective strength of reasoning. The Chief Justice, referring to the broad statements in the decisions, on the relations of inhabitants on reservations to the State governments, on which the majority opinion is based, said: "But the consequences to the inhabitants is such that I can not conceive that it should be the law, and should have been the law during the more than one hundred years since the national reservations were first established, and people began to live on them. The necessity of the inhabitants is so obvious and imperative that it would seem to me there must be some adjustment of the law to it, and that we are not permitted to suppose that the legislative bodies, State and Federal, or the framers of the constitution have not intended to meet it. The argument from necessity, or from inconvenient consequences, in short, seems to me to compel another construction." The Chief Justice enumerated many instances in which persons would be deprived of any remedy whatever because of residing on a government reservation if the majority ruling in the Lowe case is followed. Among the instances mentioned are, the appointment of guardians for and adoption of infants; lunacy proceedings; administration of estates; causes of action arising from negligence, limited by statute to injuries occurring within the State; rights growing out of workmen's compensation acts; and divorce. As a conclusion the Chief Justice stated: "In no case that I have found has an inhabitant on a Federal reservation been denied the private laws and remedies of the State court, where Congress has furnished him no other." In People v. Lent, 2 Wheeler's Criminal Cases, 548, the court said: "An argument from inconvenience is, to be sure, not conclusive, but it ought to have its influence where it is so manifest." The jurisdiction of the court in the Lowe case depended upon the sole question

whether a soldier in the United States army merely stationed on a government reservation was a resident of the State of Maryland, such as to afford the State courts jurisdiction of his divorce proceeding. In this case the additional element is, that, besides being an officer in the United States army residing on the government reservation of Fort Benning, the petitioner testified that he had been a resident of Fort Benning, Ga., for more than twelve months before the filing of the petition, had declared Georgia to be his home, and that his intention was to always claim Georgia as his home, whether transferred or not by the United States authorities to any other post for army service. What that evidence avails must necessarily be decided.

The provision of the United States constitution quoted above, in which the government is delegated the power "to exercise exclusive legislation" over federal reservations such as Fort Benning, specifically refers to *legislation*. It does not expressly deny the right of any one residing on such reservation to litigate in courts of either the State within which the reservation is located or elsewhere. Art. 1, sec. 8, par. 17, of the United States constitution is as follows: "The Congress shall have power . . to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." If the Congress should exercise the power of exclusive legislation with regard to such rights, the State courts would be excluded to the extent provided in such legislation. In 18 U. S. C. A. § 451, it is declared that the crimes designated therein shall be within the jurisdiction of the United States when committed on board an American vessel on the high seas or great lakes, or "within or on any lands reserved or acquired for the exclusive use of the United States," according to the constitutional provision above quoted. See also §§ 468, 511. The latter section, among other crimes, denounces and provides punishment for polygamy, unlawful cohabitation, incest, adultery, etc. See also Cannon v. U. S., 116 U. S. 55 (6 Sup. Ct. 278, 29 L. ed. 561). Suffice it to say that the Congress to this date has not enacted any legislation with regard to the right of a United States soldier residing on a government reservation to sue in a State court for a divorce. In Barber v. Barber, 62 U. S. (21 How.) p. 582, the Supreme Court declared: "This

court disclaims altogether any jurisdiction in the courts of the United States upon the subject of divorce or for the allowance of ' alimony, either as an original proceeding in chancery, or as an incident to a divorce a vinculo, or to one from bed and board." The United States Congress has exercised its power of "exclusive legislation" over many government reservations, such as national parks, army posts, and the like. It already exercises criminal jurisdiction to try such criminal offenses as murder, robbery, etc., committed on such reservations.

In People v. Lent, supra, the court said: "As to some of the powers given to Congress, they are necessarily exclusive from their very nature; because, as to them, separate powers can not be coexistent; as for example, to borrow money on the credit of the United States, to erect inferior tribunals, &c. But there are others of these powers which are of different character, and as to which the authority of the States is not excluded, and as to some matters Congress have the right to exclude the State authority by the exercise of their power to legislate as to these matters. But until Congress does exercise their power, the State authority remains. Of this latter description, I consider the power now under consideration—Congress have power to, that is, they may exercise exclusive legislation over the places purchased by the consent of the State legislature, as they have done with respect to the District of Columbia. But they are not obliged to exercise that power; and if they do not, the State authority is, in my judgment, unimpaired. It may be inferred, I think, that our State legislature which passed the law of 1800, under the plea to which the jurisdiction of this court is formed, had this view of the subject. The jurisdiction of the State is not thereby relinquished, as it is by some other laws of our own in relation to other places. Nor is Governor's Island declared to be under the jurisdiction of the United States, but the law declares that it shall, therefore, be subject to the jurisdiction of the United States. The language of the legislature I understand to mean, that they give their consent that Congress may exercise their power exclusively to legislate for Governor's Island; the place is made subject to the exercise of that power; but until it be exercised by Congress, it is, in my opinion, to use the words of the twelfth article of the amendments to the constitution of the United States, 'a power not prohibited to the State, but reserved to it.'" In re Grant's

Estate, 83 Misc. 257 (144 N. Y. Supp. 567) ; Ex Parte White, 228 Fed. 88. The issue was presented to the Supreme Judicial Court of Massachusetts, whether the defendant in military service of the United States had changed his domicile from Massachusetts to the District of Columbia. It was contended in that case that the soldier could not establish a new domicile in any military reservation to which he was ordered. The court rejected that theory, holding that "in all matters not involved in his military duties he was sui juris and had the capacity to change his domicile to any place he saw fit," leaving the question as one of fact to be determined by the jury on the evidence. Mooar v. Harvey, 128 Mass. 219. The status of the district, with regard to domicile, however, differs from that of the ordinary army post, in that any person may reside within the former, and, if a citizen of the United States, he may acquire a domicile in the district. Furthermore Congress has provided a system of courts which has jurisdiction of many subjects. This court approved the decision in Walker v. Walker, 45 Nev. 105 (198 Pac. 433), "that residence in the State for the statutory period solely for the purpose of obtaining a divorce is not sufficient to give jurisdiction, but a *bona fide residence* with the intention of remaining must appear, and plaintiffs must bring themselves clearly and affirmatively within the jurisdiction of the court." *Cochran* v. *Cochran*, supra; Bechtel v. Bechtel, 101 Minn. 511 (112 N. W. 883, 12 L. R. A. (N. S.) 1100).

Whatever may be the true law as to jurisdiction of State courts over lands formally ceded to the United States, where the latter has not exercised its power of exclusive legislation, the precise and controlling question here is whether a soldier residing on a government reservation can acquire by such residence such domicile as will afford jurisdiction to a Georgia Court of his suit for divorce under the Civil Code (1910), § 2950. The American Law Institute has had this matter under consideration. In the Restatement of Conflict of Laws (proposed Final Draft No. 1, p. 48, sec. 23, illustration 2) it is said: "A's domicil is X. As an officer in the army, A is required to live in Y at an army post, his family being permitted to reside and residing with him. A is still domiciled in X." The letter "X" here is intended to represent the domicile of origin, that is, the State where the soldier was born, or to such domicile as the soldier has acquired before entering into the service of the United

States army. That conclusion is based by the Institute on the theory as follows: "A soldier or an officer or man in the navy or the marines is under a legal compulsion to obey the orders of his superior officer. This compulsion potentially exists during the whole term of his military service. . . It is true than an officer may ask for a post, and may on his application be assigned to it; but this is entirely in the will of his superior officer. The choice is not in his own power. When the assignment is made he is not only legally but physically compelled to live in the quarters assigned. The only way he can escape the necessity is to resign from the army and have his resignation accepted, in which case he would not be allowed to live on the post. It is of course possible for him to provide a house of his own, off the post, where his family may live, if this is allowed by his superior officers; and it is possible for him to change his domicil by the proper proceedings while on leave. But he can not acquire a domicil in any army post." See Gildersleeve v. Gildersleeve, 88 Conn. 689 (92 Atl. 684, Ann. Cas. 1916B, 920).

From what has been said we reach the conclusion that over army posts and like government reservations purchased by the United States and ceded by the States, under the constitution, the Federal Government has power to exercise exclusive legislation. Where it has not exercised the power, the laws of the State previously existing may be exercised. Nevertheless an officer or enlisted man residing on a government army post can not acquire a domicile thereon, unless permitted so to do by the United States. Consequently the superior court in this State has no jurisdiction over this proceeding filed by such officer, the reason being that he has not established a domicile in this State for the twelve months prior to filing his petition. Such officer, if allowed by proper authorities, may establish a domicile in Georgia outside the army post; and if acquired twelve months prior to the filing of his petition, the superior court in this State would have jurisdiction of the case.

■ The second headnote does not require elaboration.

*Judgment reversed. All the Justices concur.*