### 38039. MALONE et al. v. TISON.

HILL, Presiding Justice.
On August 27, 1981, the plaintiff, Hunter Tison, filed a complaint against the members of the Board of Registration and Elections of Fulton County, Georgia; the Registrars of Elections of Fulton County, Georgia; and the Elections Supervisor of Fulton County, Georgia (the defendants are hereinafter collectively referred to as the registrars). The plaintiff alleged that he is a registered voter

in Fulton County in the City of Atlanta. He brought the action "to enjoin the receipt of voting registrations taken and processed by deputy and part-time registrars of the County of Fulton . . . using procedures and practices that violate the letter and spirit of the Elections Laws of the State of Georgia, particularly *Ga. Code Ann.* § 34-610 and 34A-506." Plaintiff prayed, among other things, that all registrations on file but not on the list of electors not be put on the list of electors to be used in the October 6, 1981, City of Atlanta mayoral election, and that all registrations on the list of electors to be used in the city election be stricken. (Voter registration for the City of Atlanta is conducted by the Fulton County registrars. See Code Ann. § 34A-501 (b).)

The defendants submitted evidence in the form of affidavits and attached exhibits showing that in addition to the main office of the Board of Registrars, voters had registered at the city halls of certain municipalities within Fulton County, at banks and their branches pursuant to contracts with these institutions, and from time to time at shopping centers and other public places. On September 11, 1981, the trial court, having heard argument of counsel, entered an order.

The court found that the registrars had violated Code Ann. § 34-610 (c), Ga. Laws 1978, p. 1023, which provides: "Additional registration places must be advertised in a newspaper of general circulation in the county one or more times at least seven days prior to the first day for registration," by not advertising all places at which registration was conducted other than the main office of the Board of Registrars. The trial court further held that no persons who registered at such places after the effective date of the 1978 amendment, Code Ann. § 34-610 (c), supra, are eligible to vote in any election in Fulton County.

In view of the fact that a City of Atlanta election was scheduled for October 6, 1981, that large numbers of unidentified voters would be affected, and that serious doubt would be cast upon the election were the order not implemented or reviewed before then, the trial court ordered the registrars to submit a plan for conducting the election, denied the registrars' motion for stay, and certified his order for immediate review. Code Ann. § 6-701 (a) (2) (A). The registrars filed an application for immediate review and a motion for supersedeas in this court on the same day the order was entered, Friday, September 11, and this court set the motion for supersedeas for oral argument on September 16. On Monday, September 14, the registrars filed a motion for expedited hearing and decision on the merits. On Wednesday, September 16, this court granted the application to appeal and the motion to expedite and, after hearing oral argument on the merits by consent, granted supersedeas. We now

address the merits of the appeal.

1. The first issue to be considered is the proper construction of Code Ann. § 34-610 (a) and (c). The first paragraph of Code Ann § 34-610 (a), Ga. Laws 1964, Ex. Sess., p. 26, 54, as amended Ga. Laws 1968, p. 871, 873-74, provides: "(a) In those counties where the registrars have a main office separate from the office of the tax collector or tax commissioner, the registrars shall keep the completed registration cards and their other papers in such office which shall be in the courthouse or other public building. If no such office exists, the registrars shall keep the completed registration cards and their other papers in the office of the tax collector or the tax commissioner; and such office shall be deemed the main office of the board of registrars . . . The chief registrar, in addition to the main office, may designate other fixed places in the county to be used for the purpose of receiving applications for registration and for the registration of electors. In any county having a population of more than 100,000, according to the United States decennial census of 1960 or any such future census, the chief registrar in each even-numbered year shall designate and staff, on a full or part-time basis, additional voter registration places within the county at least six months prior to the voter registration deadline for the November election in that year. Blank registration cards shall be kept in the places designated for registration and completed registration cards shall be kept in the main office of the registrars."

In 1978, Code Ann. § 34-610 was amended to add subsection (c), Ga. Laws 1978, p. 1023, which provides: "Additional registration places must be advertised in a newspaper of general circulation in the county one or more times at least seven days prior to the first day for registration." At issue here is whether the words "[a]dditional registration places" in the 1978 amendment to Code Ann. § 34-610 refers to all registration places other than the main office of the board of registrars, as the trial court held, or only to all "additional voter registration places" designated in even-numbered years in counties with a population over 100,000. In a brief filed as amicus curiae, the cities of College Park, Hapeville, Palmetto, Fairburn and Union City argue that the latter construction is correct.

We find that Code Ann. § 34-610 (a) creates three categories of registration places: (1) the main office of the board of registrars; (2) other fixed places which may be designated as registration places; and (3) additional non-fixed registration places which shall be designated in even-numbered years by the chief registrar of counties with a population of over 100,000 according to a U. S. decennial census of 1960 or later. That the latter two categories are distinct can hardly be gainsaid, for they are differentiated in several ways. The

second category uses the words "may designate," applies to all counties, and addresses itself to "fixed" registration places. The third category uses the words "shall designate" (in even numbered years), applies only in counties with a population of over 100,000, does not require that the additional registration places be fixed, and specifies that they may be operated on a part-time basis.

Subsection (a) of Code Ann. § 34-610 refers to the third category as "additional voter registration places." The 1978 amendment, Code Ann. § 34-610 (c), uses the words "additional registration places." We hold that the reference in the 1978 amendment, Code Ann. § 34-610 (c), to "additional registration places" is a reference solely to this third category, and the amendment does not require the one time advertisement of registration places which are "fixed."[1]

Although the record in this case is not clear enough to allow a determination in each instance of which registration places are "fixed" and which are "additional," it is clear that the offices of the city clerks of eight municipalities located in Fulton County (Roswell, Union City, Fairburn, East Point, Hapeville, Alpharetta, College Park and Mountain Park) and the Fulton County banks and branches at which registration is conducted pursuant to contract, were operated in both odd and even numbered years, were staffed full-time, were denominated as "permanent" and thus were "fixed" registration places, i.e., were not "additional registration places" within the meaning of the 1978 amendment. Therefore these fixed places were not required to be advertised and registrations processed at these locations would be unaffected by any violation of the advertisement provision of Code Ann. § 34-610 (c).

We proceed to consider registrations conducted at the third category of registration places, the "additional registration places", e.g., shopping centers, which are required to be advertised.

2. The trial court found as a fact that the registrars had maintained additional registration places without compliance with Code Ann. § 34-610 (c)'s requirement that additional registration places be advertised. The registrars admit that they placed no paid advertisements giving notice of additional registration places but contend that the evidence shows voluminous publicity was given to the existence of additional registration places and that such publicity (articles in newspapers of general circulation in Fulton County)

---

[1] We note that the language of the analogous section in the 1968 Municipal Election Code, Code Ann. § 34A-506, Ga. Laws 1968, pp. 885, 899, as amended, Ga. Laws 1979, pp. 964, 965, differs from the language of § 34-610 of the Georgia Election Code which is applicable here.

satisfies the statutory requirement of advertisement. We cannot agree. Although the record does indicate that extensive publicity was given to additional registration places, and although the trial court found "that the registration efforts in the community have been conducted in the utmost of good faith, and that there is no evidence before the Court relative to any misuse of public powers . . . ", we agree with the trial court that publicity in news articles is not equivalent to advertisement as required by the statute.

The registrars also contend that Code Ann. § 34-610 (c) is directory and not mandatory. Again we cannot agree. The statute states that: "Additional registration places *must* be advertised. . . ." (Emphasis supplied.) Furthermore, the general rule is that: "All provisions of the election laws are mandatory if enforcement is sought before election in a direct proceeding for that purpose. . . ." *Hastings v. Wilson,* 181 Ga. 305, 307 (182 SE 375) (1935), quoting Norman v. Indiana, 51 Ind. App. 425 (99 NE 812) (1918).

Having determined that the advertisement requirement of Code Ann. § 34-610 (c) is mandatory, we must turn to the appropriate mechanisms for its enforcement. The remedy which the trial court adopted, disenfranchisement of voters who registered at unadvertised additional registration places, will be discussed in Division 3, below. However, in addition to disenfranchisement of voters in appropriate cases, if any, Code Ann. § 34-610 (c) is capable of enforcement in other ways. It may be enforced as to future registration by mandamus or injunction against the registrars. And in any instance where it is wilfully abrogated by the responsible public officers, they are subject to criminal prosecution under Code Ann. § 34-1935, Ga. Laws 1964, Ex. Sess., pp. 26, 196. This is to say, the election laws of this state can be enforced by penalizing the officials involved without penalizing the voters.

3. Having found that the registrars had violated Code Ann. § 34-610 (c), the trial court concluded that voters whose registrations were processed at additional places which were unadvertised are not properly registered and are not entitled to vote. The registrars contend that disenfranchisement of otherwise qualified registered voters is not an available remedy where the ground for their disenfranchisement is negligence attributable solely to the registrars. This contention has been extensively briefed in this court by the League of Women Voters as amicus curiae. On the facts of this case, we agree.

The Court of Appeals has stated that "there is a distinction between the errors of officers conducting elections and errors of the voters themselves; in the former case, since the voter has no power over the officer, the officer's blunder will not disfranchise the voter —

unless it is mandatory under the law, whereas the voter may *by his own neglect* disfranchise himself." *Blackburn v. Hall,* 115 Ga. App. 235, 240 (154 SE2d 392) (1967). *Blackburn* involved irregularities in voting; here we deal with irregular registrations, and the law is, if anything, even clearer. "It is a general rule that statutes prescribing the power and duties of registration officers should not be so construed as to make the right to vote by registered voters dependent on a strict observance by such officers of minute directions of the statute, thereby rendering the constitutional right of suffrage liable to be defeated through the . . . ignorance, or negligence of the registrars. Thus an elector will not be deprived of his right to vote merely because of the . . . negligent failure of the registrar to enter his name or address on the registry list, or because he was registered by a third person with whom the registrar had left his books, or because of the failure of the registrar to post a list of the electors, or because the registration was made at a place other than that named by the registrar in his notice." 29 CJS Elections § 51 (footnotes omitted).

The facts of this case amply demonstrate the soundness of this rule. The advertisement requirement of Code Ann. § 34-610 (c) is a salutary one; it encompasses within its purposes both the interest of the citizen in learning of convenient places to register to vote, and the interest of the voters in knowing where registration is being conducted so that any imbalance in chosen locations becomes apparent and can be challenged. But to allow the violation of this provision, which was undoubtedly intended to lead to increased registration throughout the county, to disfranchise otherwise qualified voters, would be to defeat the purpose of the statute when applied to the facts of this case.

We share the dilemma faced by the trial court and are concerned not only with the present but with the future as well. Although the remedy of disenfranchisement of voters registered in violation of the statute is so severe as to be unpalatable where the good faith of the registrars is not disputed, likewise the prospect of encouraging or condoning neglect of statutory duties (especially in the area of elections) by failing to extract a severe penalty is unsettling. We are persuaded, however, that here the remedy of disenfranchisement is inappropriate; indeed, in the absence of notice to the challenged voter it may be unconstitutional, as well as a violation of state law. See State v. Gates, 134 S2d 497, 499-500 (Fla. 1961); Code Ann. §§ 34-615, 34-627 (d), 34-628 (a) (c). Moreover, the use of this remedy could encourage the manipulation of registration procedures as well as discourage it. Absent advertisement, selective registration could be conducted without detection. But if the remedy be disenfranchisement, successful challenges to otherwise qualified

voters could be built into selected registration efforts by failure to advertise them. Therefore we hold that, in view of the good faith finding of the trial court, the registrations of otherwise qualified voters are not invalid because they were processed at additional registration places which were not advertised in compliance with Code Ann. § 34-610 (c).

4. In conclusion, we would point out that plaintiff prayed, among other things, that all registrations on file but not on the list of electors (See Code Ann. §§ 34-622, 34A-516 (b)) not be put on the list of electors to be used in the October 6, 1981, City of Atlanta mayoral election, and that all registrations on the list of electors to be used in the city election be stricken.

Code Ann. § 34-203 (d) provides that "Upon any action being filed in any court of this State seeking relief affecting the calling, holding, conduct, determination, result, tabulation or certification of any election or primary . . . the State Election Board shall be served with a copy of the proceeding. . . ." See also Code Ann. § 34A-110; *Lyde v. City of Brunswick,* 241 Ga. 554 (246 SE2d 673) (1978). As we stated in *O'Keefe v. Braddock,* 237 Ga. 838, 839 (229 SE2d 758) (1976): "Code § 34-203 (a) gives the State Election Board the right to intervene as a party in any action seeking mandamus, injunction, or other relief to compel compliance with any election or primary law of this state. Code § 34-203 (d) gives the State Election Board notice of such actions. The right to intervene would be of little use without the notice requirement. Together, the two subsections provide notice and opportunity to be heard. The result should be uniformity of interpretation and application of our election laws throughout the state."

To accomplish the intended purposes of Code Ann. § 34-203 (see also *Lyde v. City of Brunswick,* supra), the words "seeking relief affecting the calling, holding, conduct," etc., in Code § 34-203 (d) are not to be given a strict interpretation.

Plaintiff's action sought relief affecting the holding, conduct and tabulation of the City of Atlanta election and hence notice to the State Election Board was required by Code Ann. § 34-203 (d). No such notice appears of record. "The omission of the required notice constitutes a fatal defect." *Lucken v. Falligant,* 243 Ga. 816, 818 (256 SE2d 788) (1979). Had such notice been given, the arguments advanced to this court by the amicus curiae likely would have been presented to the trial court by the State Election Board.

The judgment of the trial court is reversed and the case is remanded for such further proceedings, if any, as are not inconsistent with this opinion.

*Judgment reversed. Jordan, C. J., Marshall, Clarke, Smith*

*and Gregory, JJ., concur.*

DECIDED SEPTEMBER 23, 1981.

*John Tye Ferguson,* for appellants.

*George O. Lawson, Jr., A. Michael Washington, Emmet J. Bondurant, Bradley Taylor, George E. Glaze, Robert Mark Mahler, Marva Jones Brooks, Isabel Gates Webster, W. Roy Mays III, P. Andrew Patterson,* amicus curiae.

*James R. Patterson,* for appellee.