S93A0786, S93X0787. JOHNSON v. BYRD; and vice versa.
(429 SE2d 923)

CARLEY, Justice.

In a runoff election for the office of probate judge of Talbot County, Joe S. "Slade" Johnson, Jr. received only 41 more votes than Gary Ellis Byrd. Byrd then filed a petition contesting the election and the eligibility of Johnson to hold the office of probate judge. After Johnson answered, the case proceeded to a bench trial. Although the trial court found that Johnson was not ineligible for the office of probate judge, it did determine that 104 votes which had been cast in the runoff election were void. Based upon this finding, the trial court invalidated Johnson's election and ordered that a new election be held. In Case No. S93A0786, Johnson appeals from the trial court's order invalidating his election and, in Case No. S93X0787, Byrd cross-appeals from the trial court's order upholding Johnson's eligibility for the office of probate judge.

## Case No. S93A0786

1. Eight convicted felons, who were currently serving their sentences, were shown to have cast ballots in the election. The trial court found that these eight votes were void and Johnson enumerates this finding as error.

The eight felons had not been notified of their ineligibility to vote and their names had not been removed from the list of electors. However, the Constitution of this state clearly provides that "[n]o person who has been convicted of a felony involving moral turpitude may register, remain registered, *or vote* except upon completion of the sentence." (Emphasis supplied.) Ga. Const. of 1983, Art. II, Sec. I, Par. III (a). See also OCGA § 21-2-219 (a.1) (1). Thus, even though the eight felons may have "remain[ed] registered" voters, they still could not legally *vote* and their votes could still be challenged even *after* they had been cast. See *Taggart v. Phillips*, 242 Ga. 454, 455 (249 SE2d 245) (1978). Accordingly, the trial court correctly found that the votes of the eight felons were void.

2. Forty-three votes were cast by individuals whose names appeared on the list of electors, but whose registration cards had not been signed. The trial court's finding that these 43 votes were void is enumerated as error.

"The General Assembly shall provide by law for the registration of electors." Ga. Const. of 1983, Art. II, Sec. I, Par. II. The object of the voter registration law "is to insure and sustain the integrity of public elections. . . ." *Leverette v. Leonard*, 192 Ga. 359, 364 (15 SE2d 421) (1941). To that end, "[n]o person shall vote in any primary or election held in this state *unless* he shall be . . . [r]egistered as an elector *in the manner prescribed by law*. . . ." (Emphasis supplied.) OCGA § 21-2-219 (a) (1).

> One can not *lawfully* register as a voter without signing his name [to the oath on the registration card, OCGA § 21-2-217,] in person, except that where the applicant can not sign his name, the proper officer "shall sign it for him, the applicant making his mark thereto." [OCGA § 21-2-221.]

(Emphasis supplied.) *Turk v. Royal*, 34 Ga. App. 717, 718 (6) (131 SE 119) (1925).

> The qualification of electors and regulations with respect to registration of voters being as indicated above, although a person's name may appear on the registration list he is not a qualified voter if he has not taken the oath required by law. . . . Accordingly . . . the votes cast by [those persons who never signed their registration cards] were illegal and

should not have been received by the managers or counted in ascertaining the result.

*Stephens v. Ball Ground School Dist.*, 153 Ga. 690, 694 (2) (113 SE 85) (1922). See also *Chapman v. Sumner Consolidated School Dist.*, 152 Ga. 450, 452 (2) (e) (109 SE 129) (1921); *Taggart v. Phillips*, supra.

By failing to sign their registration cards, the 43 individuals never took the oath required to qualify them as voters in this state and, therefore, they never became lawfully registered voters who were authorized to cast ballots. Compare *Malone v. Tison*, 248 Ga. 209, 214 (3) (282 SE2d 84) (1981) (" 'right to vote by registered voters [not] dependent on a strict observance by [registration] officers of minute directions of the statute' "); 42 USC 1971 (a) (2) (B) (prohibiting denial of the right of any individual to vote because of an error or omission relating to any application, registration, or other act requisite to voting, "if such error or omission is *not* material in determining whether such individual is qualified under State law to vote"). Accordingly, the trial court did not err in finding these 43 votes to be void.

3. Johnson's remaining enumerations of error relate to the trial court's findings that an additional 31 votes were void. However, these remaining enumerations need not be addressed. The election was decided by a margin of only 41 votes. The trial court correctly found that the votes of the eight convicted felons and the forty-three individuals who never became lawfully registered voters were void. The trial court's finding that an additional 22 votes were void is not challenged on appeal. Thus, there were at least 73 void votes cast in the election. Seventy-three void votes are more than sufficient to place the results of this election in doubt. Thus, without regard to the additional 31 votes that were found to be void, "the trial court was required to declare the election invalid and call for another election. [Cit.]" *Hammill v. Valentine*, 258 Ga. 603, 604 (2) (373 SE2d 9) (1988).

## Case No. S93X0787

4. Byrd enumerates as error the trial court's finding that Johnson was not ineligible to hold the office of probate judge of Talbot County.

The law requires that Johnson be "a resident of the county in which [he] seeks the office of judge of the probate court for at least two years prior to qualifying for election to the office. . . ." OCGA § 15-9-2 (a) (1) (B). It is undisputed that "resident" as used in this statute refers to domicile. See *Clark v. Hammock*, 228 Ga. 157 (2) (184 SE2d 581) (1971). The evidence showed that, for more than two

years, Johnson had owned a home in Talbot County for which he had claimed a homestead exemption. During a portion of the two-year period prior to qualifying for election, however, he had lived in Fayette County while serving in the army. This would not compel a finding that Johnson was not domiciled in Talbot County during the period that he lived in Fayette County. "When [Johnson] entered the army he did not as a matter of law lose his domicile in [Talbot County]." *Dicks v. Dicks*, 177 Ga. 379, 384 (1) (170 SE 245) (1933). While living in Fayette County, Johnson had continued to maintain his home in Talbot County and had returned there after retiring from the army.

> " 'If a person leaves the place of his domicile temporarily, or for a particular purpose, and does not take up an actual residence elsewhere with the avowed intention of making a change in his domicile, he will not be considered as having changed his domicile. [Citations]. . . .' " [Cits.]

*Clark v. Hammock*, 228 Ga. 157, 158 (2) (184 SE2d 581) (1971).

The evidence also showed that, while living in Fayette County, Johnson had applied for and received a homestead exemption for his residence there. Byrd urges that this would compel a finding that Johnson had intended to change his domicile from Talbot to Fayette County. However, Johnson did not cancel the homestead exemption for his residence in Talbot County. Thus, the evidence would compel a finding that Johnson had claimed more than the one homestead exemption to which he was entitled, but would not necessarily compel a finding that Johnson's domicile was Fayette rather than Talbot County. Johnson testified that his application for a homestead exemption in Fayette County was the result of his mistaken belief that he could lawfully claim such exemption on two residences and that, upon discovery of his mistake, he had cancelled the homestead exemption claimed in Fayette County and had paid the taxes that were owed on the non-exempt residence. Having heard all the evidence, including Johnson's explanation regarding the homestead exemption in Fayette County, the trial court was authorized to find that Johnson had satisfied the two-year residency requirement for seeking the office of probate judge of Talbot County.

*Judgment in Case No. S93A0786 affirmed. All the Justices concur, except Benham and Sears-Collins, JJ., who dissent; Clarke, C. J., not participating. Judgment in Case No. S93X0787 affirmed. All the Justices concur; Clarke, C. J., not participating.*

SEARS-COLLINS, Justice, dissenting.

I dissent to Division 2 of the majority opinion and to the judgment in Case No. S93A0786, but I concur in Case No. S93X0787.

The majority has mistakenly relied on *Stephens v. Ball Ground School Dist.*, 153 Ga. 690, 694 (2) (113 SE 85) (1922), for the proposition that voters who did not sign the oath on their registration cards are not entitled to have their votes counted. The case of *Cole v. McClendon*, 109 Ga. 183 (3) (34 SE 384) (1899), actually controls the issue now before us.

In *Cole* the contention was made that the votes of certain individuals were not entitled to be counted because the voters in question had not signed the oath prescribed by law. Id. at 189. At that time the Georgia Constitution set the qualifications necessary to vote and provided that the General Assembly may provide for the "registration of all electors." Notably, registration according to the law was not set out as a qualification to vote. We rejected the challenge to the votes in question, holding, in summary, that the failure to sign the oath was an irregularity in registration that would not disenfranchise the voters and that instead there had to be some allegation that the voters, if regularly registered to vote, would not be qualified to do so. Id. at 189-190.

In *Stephens* the same issue that was raised in *Cole* was again presented. At the time *Stephens* was decided, the applicable constitutional provision had been rewritten so as to make registration in accordance with the law a qualification to vote. *Stephens* at 692. For that reason, we did not follow *Cole* and instead held that the votes cast by persons who did not sign their registration cards were not entitled to be counted. Id. at 694.

The same constitutional language that the Court found controlling in *Stephens* was present in the 1976 Georgia Constitution, see Art. II, Sec. I, Par. I, but was deleted from the 1983 Georgia Constitution, see Art. II, Sec. I, Pars. I & II. Our present Constitution now reads like the Constitution in existence at the time *Cole* was decided, in that Art. II, Sec. I, Par. II sets forth the qualification of electors[1] and then states that the General Assembly "shall provide by law for the registration of electors."

Because of this change in the 1983 Constitution, I find that *Stephens* is inapplicable and that *Cole* is controlling.

Moreover, I find that *Cole* is consistent with *Malone v. Tison*, 248 Ga. 209 (282 SE2d 84) (1981), in which we held that the failure of registrars to comply with their statutory duties will not defeat the

---

[1] These qualifications are that a person must meet the minimum residency requirements as provided by law, must be a citizen of the United States, a resident of Georgia, and at least 18 years of age, and must not be disenfranchised by Art. II of the Constitution (i.e., not convicted of a felony involving moral turpitude and not judicially determined to be mentally incompetent, Art. II, Sec. I, Par. III).

constitutional right of suffrage. Id. at 213-215 (3).[2] In doing so, we relied on 29 CJS 125, Elections, § 51. That section of CJS provides, in addition to the language quoted in *Malone*, that "[w]here the elector has complied with all the mandatory provisions of the statute applicable to him, irregularities by registration officials will not deprive him of his right to have his vote counted."

In the present case, the applicable statute is OCGA § 21-2-221. That Code section requires the registrar or deputy registrar, first, to fill in all blanks on the registration card with information furnished by the person desiring to register to vote and, then, upon completion of the form, to "administer the oath to the applicant and then have him sign it," id. Because it is the registrar's duty to administer the oath and have the applicant sign it, I would not disenfranchise a voter based on the registrar's failure to do so, so long as the voter, if he or she had been properly registered, would have been qualified to vote.

For the foregoing reasons, I dissent to Division 2 of the majority opinion and to the judgment in Case No. S93A0786.

I am authorized to state that Justice Benham joins in this dissent.

DECIDED JUNE 7, 1993.

*Worthington & Flournoy, Samuel W. Worthington III,* for appellant.

*Doffermyre, Shields, Canfield & Knowles, Kenneth S. Canfield,* for appellee.

---

[2] In *Malone* the registrars failed to advertise "additional registration places," OCGA § 21-2-218 (d) (then Code Ann. § 34-610 (c)).